## McKee v. McKee.

(Decided May 27, 1921.)

### Appeal from Boyd Circuit Court.

1. Divorce—Grounds—Cruel and Inhuman Treatment—Evidence.— Where defendant, in a suit filed by his wife to obtain a divorce on the ground of cruel and inhuman treatment, admits that he struck her with his fist and blacked her eye and bled her nose, and on another occasion pulled out a considerable portion of her hair, he will not be allowed to excuse himself for such conduct on the ground that he acted in self-defense, unless his contention is established by clear and convincng proof, which the testimony in this case failed to do, as is shown in the opinion.

2.   Divorce—Faults—Physical Force as Correction.—It is the duty of
either spouse to bear with patience the faults and foibles of the
other and not to try to correct them by physical chastisement or
other methods calculated to produce quarrels and encounters. If
the conduct of the offending spouse is such as to warrant it, re-
lief may be had in the courts and it should not be sought by
physical force.

3.   Divorce—Alimony—Evidence.—Under the evidence as recited in
the opinion the wife should have been granted an absolute divorce
and monthly alimony in the sum of $25.00.

J. F. STEWART for appellant.

No brief for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and plaintiff below, Clara B. McKee,
sued the appellee and defendant below, Harlan McKee,
in the Boyd circuit court to obtain judgment against him
for a divorce, for alimony and for the custody of their
two infant children, Elmer McKee and Garnett McKee,
whose ages are seven and two years respectively. After
the taking of testimony by plaintiff only, the cause was
submitted and the court rendered judgment in which it
dismissed the petition for alimony and for an absolute
divorce, but decreed a divorce *a mensa et thoro,* and
plaintiff was given the custody of the younger child,
Garnett McKee, and she was allowed $15.00 per month
for its support, which the defendant was ordered to pay
at the first of each month beginning July 1, 1919, and
defendant was adjudged to pay the cost of the litigation,
including an allowance of $25.00 to plaintiff's attorney.
The defendant was adjudged the custody of the older
child, Elmer McKee. From that judgment plaintiff ap-
peals, insisting that the court erred in not granting to
her an absolute divorce, in disallowing her alimony, in
giving to defendant the custody of Elmer McKee, and
in making an insufficient allowance to her attorney.

The grounds relied on in the petition for the pro-
curement of the divorce are (1), Six months' cruel and
inhuman behavior toward plaintiff in such a manner as
to indicate a settled aversion toward her and to perma-
nently destroy her peace and happiness, and (2), such
cruel beating and injury to the person of plaintiff by the
defendant as indicated an outrageous temper in him and
probable danger to her life or danger of suffering great

bodily injury from her remaining with him. The petition alleged that plaintiff was a healthy, able-bodied young man and was capable of earning and was earning at the time of the filing of the suit $200.00 per month, and that he owned a farm in the state of Ohio valued at between $1,000.00 and $1,600.00. The answer denied the grounds of divorce and put in issue the right of plaintiff to the custody of the children, but the averments relating to the financial standing and ability of defendant were undenied.

From the admissions in the pleadings, and from the uncontroverted testimony in the case, it appears that plaintiff at the time of giving her deposition in March, 1919, was 24 years of age, having married in 1911 when she was only 17 years of age. The defendant is a few years her senior. The parties lived together on a farm in Ohio, near the city of Ironton, until about the first of December, 1917, when they moved to Ashland, Kentucky, where defendant procured a position with a railroad company at a salary of $200.00 per month, and where they continued to reside until the separation on December 4, 1918. The farm in Ohio, worth at least $1,250.00, is still owned by defendant. Both of the parties appear to be reasonably industrious and to have performed their respective duties in establishing, providing for and maintaining the material necessities of the home, but defendant was more or less exacting in regard to the personal expenses of his wife, even to the degree of penuriousness, and he was quite demanding of her as to the purposes for which she would spend the few and small amounts of money with which he would entrust her. She does not seem to have been lavish in her desires for dress, but whether so or not she was by no means gratified in that respect. Defendant also appears to have harbored an unfounded jealousy toward plaintiff and he criticized her because, as he claimed, she would not wear in his presence a cheap hat which he admired, and which she had made by covering a frame costing only ten cents. He likewise became incensed because his wife attended a neighbor while in childbirth; and he became very much enraged when his wife exhibited to him an anonymous letter stating that he, on some of the numerous nights while away from home late, was in company with some lewd women; and he very much objected to her taking in sewing for some

neighbors whereby she could obtain some extra pin
money, and which does not appear to have interfered
in the least with her attention to her household duties.
Defendant, while living upon the farm, spent the greater
portion of many nights away from home fox hunting,
and he indulged in the same practice of absenting him-
self from home at night after their removal to Ash-
land. In addition, it appears that defendant at times
during his married life was addicted to the drinking
habit, and to make matters worse plaintiff herself is
shown to have possessed what the witnesses called "a
high temper."

As stated, the facts down to this point are either ad-
mitted or proven by uncontradicted testimony. The only
contrariety in the testimony (which, according to our
view, is slight) is in that part of it relating to the acts
of cruelty on the part of defendant as furnishing the
grounds for divorce. He admits in his testimony numer-
ous quarrels with his wife, but which standing alone
would be insufficient to establish the charges against
him; but his conduct, according to his own testimony, did
not stop with quarreling alone, for on one occasion, which
was two days before the separation, he struck plaintiff
in the face with his fist and knocked her on the floor,
where she remained unconscious for some minutes and
caused her nose to bleed freely and for her to wear a
black eye for more than a month. He applied to her
vile names, and on another occasion, prior to the last one,
he corporally punished her and pulled from her head a
large quantity of hair. It is also shown by her testimony,
and not denied by him, that he would brutally treat the
children and he beat one of them at one time to such
an extent that its back was blistered for days and plain-
tiff came in for her share of denunciation for protesting
against the child's treatment. The wife testified, and it
stands uncontradicted, that on a number of occasions
defendant would say to her that he had no affection for
her and that there were a number of women in Ashland
that treated him better than she did. She also testified
that "I went over to Mrs. Clark's to get some goods to
make her some dresses and when he saw them he came
and struck me and said he would kill me. He knocked
me and when I came to he said I had no witness to prove
it after he had whipped me." She testified that while
drinking defendant would choke her until her breath was

nearly gone. Defendant admits striking plaintiff and also admits pulling out her hair, but he claims that he did so in self-defense. Our examination of the testimony fails to support his excuse for his conduct. We are not prepared to say that one spouse may never inflict corporal punishment upon the other in the absolutely necessary defense of himself or herself or some member of the family, but the testimony should clearly establish the right to do so, which is by no means true in this case. On the contrary, according to the testimony of plaintiff, each of the difficulties and each of the cruel punishments of her by her husband, was without excuse, and we are by no means convinced from the testimony of defendant himself that he was blameless, since his petty jealousies and his exacting disposition, according to his own theory, seem to have been at the bottom of the trouble.

Another circumstance, not to be overlooked, is that on two prior occasions, after receiving physical chastisement, plaintiff sued defendant for the same relief she seeks in this action. On each occasion the suits were dismissed at his solicitation, as he admits, and upon his promise, as testified to by plaintiff, that he would reform his future conduct toward her. On one of the occasions after the dismissal of the suit he claimed to have been religiously converted, but in a few weeks he resumed his old course and when plaintiff reminded him of his conversion he became offended because she "ridiculed his religion." We recite these circumstances, as showing that defendant's insinuation of entire blame on the part of plaintiff can scarcely be true, for if so he would have hardly pursued the unnatural course of seeking her return to him, and the dismissal of the prior suits on each of those two occasions.

The high temper of plaintiff was an unfortunate fact; but it was one that defendant should have taken into consideration in his treatment of and his dealings with and demeanor toward her and to have tempered them, even to exhaustion, with all the gentility and kindness due from a husband to a member of his family, especially his wife. At any rate her temper, howsoever bad, would not alone authorize him to resort to the infliction of corporal punishment upon her in order to "put her under his thumb," as testified to by the plaintiff, and not denied by defendant. From the testimony in this record we entertain no doubt that if defendant had freed

himself of the faults and foibles, hereinbefore referred to, and had exercised that patience, gentleness and kindness toward defendant which is due from a husband to his wife, followed by even a modicum of affection instead of a renunciation of it, the matrimonial bark would still be sailing on smooth waters instead of being wrecked by the tempestuous storms which we think the testimony shows were generated by him. Entertaining this view it results that the court was in error in dismissing plaintiff's petition and in refusing to grant her a divorce.

While defendant was brought before this court on a warning order he has entered his appearance by filing a written stipulation during the pendency of the appeal and we, therefore, have jurisdiction to determine the question of alimony. From the admitted facts as to defendant's earning capacity, and considering the property he owns, it is easily apparent that an allowance of $25.00 per month for the maintenance of defendant and the $15.00 per month for maintenance of the child allotted to her, making a total sum of $40.00 per month, is exceedingly reasonable, and by the same token we conclude that plaintiff's attorney should be allowed an additional sum of $25.00.

The testimony in the record is not sufficient to show any error in the judgment concerning the custody of the children and that portion of it will not be disturbed.

Wherefore the judgment is reversed with directions to enter a judgment as herein indicated and to retain the case on the docket so that the questions of alimony and the custody of the children may be readjusted according to future alterations in conditions if any.