## Taylor v. Taylor.

May 16, 1950.

Cleon K. Calvert, Special Judge.

Joseph K. Beasley for appellant.

Astor Hogg for appellee.

MORRIS, COMMISSIONER—Reversing in part.

The record before us presents another of similar cases which from all the facts indicate a misadventure in matrimony. These parties were married in June 1947, when appellee was about 18 and appellant under 21 years of age. Apparently it was a secret marriage, and at first the parents of appellee considered annulment proceedings. They lived together until May 1948, when appellee left appellant and went to the home of her parents who lived in Harlan. A child was born on November 19, 1948.

On May 27, 1948, appellee instituted suit for divorce on the grounds of cruel and inhuman treatment; appellant filed counterclaim setting up similar grounds. Upon submission the chancellor granted appellee an absolute divorce, custody of the child; awarded appellee $25 per month alimony and $50 per month for the support of the child. On appeal we are asked to reverse the judgment in respect of these allowances, and held that under the circumstances the award to the child is excessive, and that since the proof shows the wife to have been in like fault she should not be allowed any sum.

Appellee's proof is to the effect that on more than one occasion appellant struck and bruised her. The assault, according to her testimony, which led to the final separation was whipping her with a belt. Witnesses

testify to seeing marks and bruises made in this affray. Appellant denies that he ever beat or bruised her, but admits that on one occasion when "appellee became angry and tore into him" he slapped her. There was some testimony as to appellant's drinking or being drunk, but from his corroborated testimony he was not accustomed to the use of alcoholic liquors.

Other acts which constitute some elements of cruel treatment were detailed. Appellee said the husband would get mad and pout; would not speak to her for three or four days, "no matter what I said to him." He was jealous of appellee's parents and objected to her visiting them. "He would take what money I had and refuse to give it to me." Her testimony in most respects was fairly corroborated.

Appellant to sustain his counterclaim denied all material charges made by appellee. He testified that she had a very bad temper, and this she admits, saying that she did her share of the quarreling, and "sometimes he hits me and sometimes I hit him." He said appellee left their house four or five times, going back to her parents, and many times she would fail to prepare his meals or bring his lunch to the office where he was employed, when it was not convenient for him to go to his home. She would not wash his clothing and he was compelled to take them to his mother's home for service, and he would frequently go there to eat his meals because of appellee's failure to have theirs prepared; that after the last separation she went to the home and took about $400 of his and articles of furniture. This she denied.

There is some testimony as to occurrences after the separation. This proof tended to show the attitude of the parties and the feeling that existed even after the birth of the child. Appellant says that he was not consulted as to the naming of the boy child; that he was not allowed to visit the hospital after its birth until after he obtained an order of court. Appellee says that when he came to the hospital he mishandled the child; after the child was taken to the home of appellee's parents, appellant was denied the right to visit the home by being placed under peace bond. Later an order was entered permitting him to see the child at intervals at the home of other persons.

The testimony shows that appellee has no property, but is living with her parents where she assists in housekeeping, for which she gets her "board, food and clothes." Appellant has no property or income except his salary of $200 per month as clerk for the Harlan Fruit Company, and it is argued that when he pays income tax, social security, insurance, etc., and for his sustenance, he would have left something like $100 per month from which to pay $75 under the court's order.

In determining whether or not the trial court has fairly made allowances either as alimony or support of a child, or both, we are to take into consideration the income and property of the husband, likewise the wife's estate, and the relative cause of fault on the part of either party. Aubrey v. Aubrey, 303 Ky. 534, 198 S. W. 2d 209. There is no inflexible rule, but the final conclusion must be reached by a consideration of essential facts in each particular case. Here it seems that at least for the present the wife and child are being fairly well provided for in the home of her parents.

As to fault, or like fault, it is fairly shown that appellee was high tempered and willing to engage in quarrels, and on one occasion perhaps gave the husband the right at least to reprimand her, though no provocation or act charged by appellant authorized him to inflict corporal punishment upon her. McKee v. McKee, 191 Ky. 669, 231 S. W. 213. The chancellor was to some extent impressed with the idea that there was some fault on the part of appellee, since he indicated that had it not been for the belt whipping episode, which the proof fairly showed to have occurred, divorce would have been denied.

Without undertaking to compare or measure faults, we have concluded that based chiefly on conditions and circumstances, the payment of $75 per month is slightly excessive. The appellee is entitled to some allowance, and that fixed by the judgment is fair. A fair adjustment may be reached by reducing the child's allowance to $25 per month.

The judgment is reversed in part and the case remanded with directions to enter an order as above indicated, retaining the case on the docket so that if condi-

tions and circumstances should later warrant a change in the allowances, such may be had on proper application.