## Anderson v. Anderson.

(Decided March 14, 1913.)

## Appeal from Jefferson Circuit Court
## (Chancery Branch, First Division).

1.  Divorce—Grounds for May Be Reviewed—Alimony—Custody of Children.—Although the Court of Appeals is without power to reverse a judgment of divorce, it may review the grounds therefor and evidence supporting same, for the purpose of determining whether the alimony allowed the wife is reasonable or the custody of the infant children of the parties is properly bestowed.

2.  Divorce—Confirmed Habit of Drunkenness on Part of Husband—Wasting of Estate—Alimony.—A confirmed habit of drunkenness of not less than a year's duration, on the part of the husband, accompanied by the spending of his earnings in profligate living, or impairment of his health, strength and earning capacity, is, in the absence of a suitable provision for the support of his wife and children, such a wasting of his estate as will entitle the wife to a divorce and alimony.

3.  Divorce—Circumstances Merely Suspicious in Character Not Sufficient to Establish Guilt of Unchaste Conduct in Wife.—The husband's counterclaim for a divorce on the ground that the wife had been guilty of such "lewd and lascivious conduct as proved her to be unchaste" was properly dismissed, as the evidence showed that the acts complained of were mere indiscretions on her part, not necessarily inconsistent with a life of chastity and virtue. In an action against the wife for a divorce on this ground, circumstances, merely suspicious in character, are not sufficient to establish her guilt. If the facts proved can be reasonably re-

ciled on the assumption of innocence the court will not infer guilt.

4.  Divorce—Alimony—Allowance of.—Where the husband owns an estate of from $3,000.00 to $4,000.00, an allowance of $800.00 alimony to the divorced wife, and $10.00 per month for the support of her two infant children, was not unreasonable.

5.  Divorce—Inebriety of Husband—Custody of Children.—As in this case the father, by reason of inebriety and profligacy, was unfit to have the custody of his two infant children, they were properly given to the mother.

BENNETT H. YOUNG, MARION W. RIPY for appellant.

A. C. VAN WINKLE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By the judgment complained of in this case the appellee, Maggie W. Anderson, was granted an absolute divorce from the appellant, Stanley H. Anderson, given the custody of their two infant children, awarded $800.00 alimony, $10.00 per month for the support of the children, and her costs expended in the action, including an attorney's fee of $200.00. So much of the judgment as granted alimony, and a subsequent judgment making absolute a rule issued early in the action requiring the payment of a *pendente lite* allowance by appellant, are appealed from.

We cannot reverse a judgment of divorce, but may review the grounds therefor and evidence supporting same in determining whether alimony allowed the wife is reasonable, or the custody of infant children of the parties is properly bestowed.

The divorce was asked on three grounds:

(1)  Confirmed habit of drunkenness on the part of the applicant of not less than one year's duration, accompanied with a wasting of his estate, and without any suitable provision for the maintenance of appellee or their children.

(2)  That for not less than six months appellant had habitually behaved toward appellee in such a cruel and inhuman manner as to indicate a settled aversion to her, and to destroy permanently her peace and happiness.

(3)  Such cruel beating of and injury to her and attempts to injure her, by appellant, as indicated an outrageous temper in him and probable danger to her life, or great bodily injury, from her remaining with him.

The appellant by his answer and counterclaim, traversed the averments of the petition and sought a divorce for himself on the ground, that appellee had been guilty of such lewd and lascivious behavior as proved her to be unchaste. The affirmative matter of the answer and counterclaim was controverted by the appellee's reply. A great many depositions were taken by each party, but it would stretch this opinion to an unnecessary length to comment upon the testimony of the many witnesses in detail. We might rest with saying that the evidence in appellee's behalf, furnished by the depositions, abundantly sustained each of the three grounds of divorce relied on in the petition. Indeed, it proves more than was charged in the petition, as it not only shows appellant to have been a confirmed drunkard, his cruel and inhuman treatment of appellee and brutal beating of her, during the period preceding the institution of her action, alleged, but also that such habit of drunkenness and mistreatment of her had continued many years.

No witness testifying in appellant's behalf would say that he was not a confirmed drunkard. Among the witnesses introduced by him were his mother, sister and sister-in-law, and even the testimony of these members of appellant's family show his neglect of appellee, and failed to refute the charge made by the latter as to his cruel treatment of her; in respect to which, they, in substance, said that if appellant abused, cursed or struck her, they did not know it.

It seems equally apparent that appellant's indulgence in intoxicating drinks all these years has been accompanied by a wasting of his estate. He has not, it is true, disposed of his undivided third interest in $10,000.00 worth of Louisville real property, in which his mother owns a life estate, but as he is comparatively a young man and has since his marriage jointly occupied with his mother, brother and sister, rent free, the property in which he owns a remainder interest, the inquiry naturally arises, what has he done with the profits made from his business as a brick contractor? which the evidence shows he has conducted in Louisville since his marriage. It does not appear from the evidence that they were all expended in maintaining his wife and children, or that any considerable part of them were applied to the enlargement of his business. On the contrary, the evidence shows that at times at least his family were poorly sup-

plied with the necessaries of life, and that these times of leanness were coincident with appellant's protracted indulgence in sprees of intoxication.

T. R. Smith, appellant's business partner, testified that appellant, at times and when drunk, spent money belonging to the firm, but later repaid it.

It does not appear from the evidence that appellee was wasteful of appellant's means, or that he supplied her with money, except at times, for the purchase of groceries. In one or two instances, so great was her need of money that she was compelled, with the approval of appellant's sister-in-law, Mrs. Ernest Anderson, so the latter testified, to take it from his pocket while he was in a drunken stupor.

Manifestly, a husband and father of appellant's habits of life, with no more property than he possessed, must depend upon his labor, physical or mental, in some line of work or business, to provide means for the support of his family; and however great his success in making money, if what he should use of it for the support and welfare of his wife and children, according to their station in life, is not so applied, but is spent by him in ministering to his confirmed appetite for strong drink or upon his companions in inebriety, or in profligate living; such use of his property and earnings is a wasting of his estate, to say nothing of the loss resulting to his family from the impairment of his health, earning capacity and manhood, caused by his indulgence in the habit of drunkenness, which also constitute a wasting of his estate in the meaning of the statute.

In McKay v. McKay, 18 B. Monroe, 8, in considering this ground for divorce, we said:

"The legislature did not, in our opinion, intend, by the language used in the foregoing provision, to exclude from its benefit a wife whose husband, at the time of the application, or even before, should be destitute of property. Such construction would operate sorely in cases similar to the present, where the application for divorce has been deferred by the wife with the fond but vain hope of reformation, until, after the entire estate has been squandered, she is constrained, for the protection of herself and children, to ask the protection of the law. The liberal construction directed by the Revised Statutes, 190, should be applied, and the words, "wasting of his estate," where he has no property, should be deemed to

apply to and embrace a man's health, time and labor, all of which, for the purpose of supporting himself and family, are essentially his estate.''

In Shuck v. Shuck, 7 Bush, 307, the wife sought a divorce upon the statutory ground under consideration. The circuit court refused to grant the divorce. On appeal, in reversing that judgment, we said, Chief Justice Robertson writing for the court:

"The testimony preponderates decidedly in support of the charge of a confirmed habit of drunkenness for more than a year. In like manner, it sufficiently proves a wasting of his only estate, which consisted of his mental and physical faculties, and of the want also of a suitable provision for such a woman and their only child, a son about seven years old. The provision contemplated by the statute is an *assured* maintenance by the husband's own means, and not, as in this case, dependence on a precarious and contingent expectancy from his generous father, or her own father or kindred. No such hope of extraneous and uncertain support can be adjudged a suitable provision by the husband, as prescribed by the statute.''

Crowley v. Crowley, 19 R. 206; Asbill v. Asbill, 14 R. 105.

The second and third grounds urged for the divorce prayed by appellee are, as has been said, also well supported by the proof; the great weight of it being to the effect that appellant was utterly lacking in any manifestation of affection for her, wholly indifferent in his demeanor toward her, and at all times neglectful of her happiness. Only a few times during their married life did he take her out from home, and on more than one of these occasions, he humiliated her by getting drunk. When on visits with the wife to her parents at Lebanon, he would get drunk, and on one such visit his drunkenness caused him to be sent to prison, to her great shame.

According to the evidence, he gave appellee little or no assistance at their home; and in an illness, with which she was afflicted during the fall or winter preceding their separation, he refused to carry coal to her room, leaving such chores to be performed by the sick wife and children.

The evidence further shows that appellant during and between his spells of intoxication manifested an ungovernable temper toward appellee; that he cursed and

abused her, and several times, when drunk, beat and choked her in the presence of their children. On more than one of these occasions she fled with the children to the homes of nearby friends, by whom the bruises on her person made by the blows of appellant were seen.

The foregoing facts make it plain that appellant's cruel and inhuman treatment of appellee was of a character well calculated to permanently destroy her peace and happiness, and also to compel her to separate from him for the safety of her life and person. We have affirmed many judgments for alimony resulting from the granting of a divorce to the wife for cruel treatment of her by the husband less culpable than that of appellant in this case. Such a case was that of Grow v. Grow, 134 Ky., 816, in the opinion of which we said:

"The bonds of matrimony should not be severed and the home broken up for slight or trivial causes, but no woman should be required to live with a man whose conduct day by day toward her is such as to indicate that he has no respect for her, no consideration for her wishes, and no regard for her feelings. When he habitually behaves toward her in a rough, rude and insulting manner, humiliates her upon any and all occasions, and without cause, is cross, rude and unkind to her, she should not be required to live with him; and this is especially true where this treatment of her and conduct on the part of her husband toward her, as in the case at bar, is shown to have gradually grown worse."

The evidence introduced in support of the ground for the divorce asked by appellant in his answer and counterclaim, falls short of proving appellee to be unchaste. The strongest of this testimony is furnished by appellant's relations by blood or marriage, and, while much of it tends to show numerous indiscretions on the part of appellee, they were not of so lascivious a character as to demonstrate a lack of chastity. Her fondness for dancing led her, at times, to attend the public parks and boat excursions on the river; and, while appellant's evidence showed she frequently joined in the dancing, in some instances accepting as partners men with whom she was not known to have been acquainted, it was also made to appear from the evidence that, though unattended by her husband, she was invaribaly accompanied to the parks or on the excursions by friends, both male and female, whose reputations, if doubtful, were not shown to be so.

A matter especially complained of is that on one occasion, four or five years ago, appellee was at a party given by Mrs. Smith, appellant's partner, and that from there she and Mrs. Crowley drove in a carriage with Messrs. O'Neil and Hopewell to Jacob's Park, stopping for a short time at Snyder's dance hall, and returning at a seasonable hour to their homes. While this may have been an indiscretion, it involved no moral turpitude. Mrs. Smith, it appears, had intended to go with Mrs. Crowley and the two men, but being unable to do so, appellee, at her request, took her place in the carriage.

Much of the evidence furnished by appellant's mother, sister and sister-in-law was to the effect that appellee often talked from her residence over the telephone, apapparently with men, some of whom they did not know; and that the sister-in-law, on one or more occasions, in the absence of appellee, answered at the telephone calls for her from a man or men; but it does not appear from the evidence that the telephone conversations thus engaged in by appellee were of an illicit character or for any improper purpose, or that the men to whom she talked were of lewd character. Moreover, as there was but the one telephone in the house occupied jointly by appellant and family, his mother, sister and sister-in-law, and it was accessible to and used by all of them, it is very improbable that appellee would have had improper conversations with men within the hearing of other inmates of the house. An attempt was also made by appellant to show that appellee sustained improper relations of some sort with Davis McElroy and Dr. Wilcoxen. McElroy flatly denied any such relation and appellant's witnesses signally failed to prove it. The same is true as to appellee's relations with Dr. Wilcoxen. His relations with appellant, his mother, sister and sister-in-law were practically, as intimate as were his relations with appellee. He was a dentist and did a great deal of work for appellee that made it necessary for her to visit his office, but he was equally a friend of the entire Anderson family and constantly sold them products from his farm. So great, indeed, was the confidence of appellant, his mother, sister and sister-in-law in Dr. Wilcoxen that when appellee, driven from home by appellant's inhuman treatment of her, took refuge with her people in Lebanon, appellant's family got Wilcoxen to write to her and urge her return to appellant. At no time was Wilcoxen advised that his

relations with appellee were objected to or regarded as reprehensible by appellant or any of his family. There was likewise an attempt to show that appellee was guilty of reprehensible conduct with W. T. Lee, a brother of appellant's sister-in-law, Mrs. Ernest Anderson. Lee is over sixty years of age and both a father and grandfather. According to his testimony appellee requested him to make an appointment with her for one night in August before the institution of her action for divorce, which he claims to have agreed to, but for some reason unexplained, did not keep. The object of the proposed meeting was not stated by him. He evidently attempted by inuendo to make the impression that the appointment was an assignation for sexual intercourse. The story, in the manner presented, is strongly persuasive of its own improbability, and is uncorroborated by any other fact or circumstance appearing in the record. Lee's statements are, at most, but the declarations of a would-be paramour. Such evidence is justly subject to suspicion. Coming, as it does, in doubtful form, we are not inclined to give it credence. Evans v. Evans, 93 Ky., 510.

It is patently noticeable that not one of the many witnesses introduced in appellant's behalf has testified to appellee's guilt of a single lascivious act or to seeing her in a compromising situation with any man. There is no proof that she allowed improper liberties from men, or that she put herself in a position to invite them. At most, the evidence only shows that she was addicted to levity of conduct, dancing and other gaieties, that led to social indiscretions. But such conduct, though blameable, was not inconsistent with a life of virtue, and a woman should not be convicted of a want of chastity on mere suspicion.

As said in Rodgers v. Rodgers, 13 R. 203 (decided by the Superior Court):

"In an action for divorce, circumstances merely suspicious are not sufficient to establish the wife's guilt of such 'lewd and lascivious conduct as proves her to be unchaste.' If the facts proved can be reasonably reconciled on the assumption of innocence the court will not infer guilt." Rogers v. Rogers, 13 R. 526; Bond v. Bond, 150 Ky., 389.

We are unwilling, upon such evidence as is here presented, to adjudge appellee unchaste and thereby destroy her reputation, cast a cloud upon the future of her chil-

dren, and, perhaps, a doubt upon the legitimacy of their birth. In view of the inherent weakness of the evidence, and the apparent bias and insincerity of some of the witnesses testifying for appellant, we are impressed that the assault upon appellee's reputation for virtue was intended as a counter irritant, rather than a bona fide defense. The same evidence that compelled the granting of the divorce to appellee, authorized the circuit court to give her the custody of her two infant children, as it conclusively shows the father to be wholly unfit to have charge of them. He insists, however, that they should have been placed with his mother and sister. They are shown to be excellent people, but placing the children with them would throw them with the father, whose debauched habits and profligate life they would daily witness. Obviously, such a situation would not be promotive of their happiness or moral welfare.

Appellee, aided by her parents, in Marion County, with whom the children are at present staying, is able to care for them and there is nothing in the record which shows her unfitness for the task. In Shallcross v. Shallcross, 135 Ky., 424, in discussing the disposition to be made of a child of divorced parents, we said:

"In all cases respecting the custody of a child the welfare of the child is the governing principle with the court. The right of the father to have the custody of the child is, in its general sense, admitted, but, this is not on account of any absolute right of the father, but for the benefit of the infant; the law presumes it to be for its interest to be under the care of its natural protector, both for maintenance and education. Neither the father or the mother, however, has any right that can be allowed to seriously militate against the welfare of the child. If the father be unfit to have the custody of his child, the courts will promptly declare his rights forfeited. The same is true of the mother, and neither parent is entitled to the custody, if it is manifestly against the child's welfare. In such a case the custody of the child will be awarded to a third person. If the child has reached years of discretion, its wishes will be considered, but will not always control. As between parents, the tendency of the courts is to give very young children to the mother, especially in the cases of divorce. * * * "

In view of the tender years of the children of the divorced parents in this case, and of the character and cir-

cumstances of the parents, we are satisfied that the act of the circuit court, in putting them in the custody of the mother, was the best thing that could have been done for the welfare of the children. If, in the future, developments should arise during the infancy of the children, that would make some other disposition of them by the court necessary, its power will be sufficient to that end.

Appellant's complaint as to the amount of alimony allowed is without merit. He is the owner of, at least, three or four thousand dollars worth of real estate, to say nothing of what he ought to be able to earn in his business as a brick contractor or at his trade of bricklayer. Therefore, the eight hundred dollars ($800.00) lump sum for which appellee was given the judgment by way of alimony is not unreasonable. And if he is able to earn, in his business as brick contractor, from $50.00 to $100.00 per month, as the evidence tends to show, he cannot complain of the requirement of the judgment that he pay the additional sum of $10.00 per month for the support and education of his children.

In determining what alimony shall be allowed the wife upon the granting of a divorce, the court must take into consideration the condition and needs of the wife and those of the children, if there be children, and also the condition of the husband, amount and value of his estate, his earning capacity and reasonable future expectancy. Muir v. Muir, 133 Ky., 125; Green v. Green, 152 Ky., 486; Sebastian v. Rose, 135 Ky., 197; Barlow v. Barlow, 28 R. 664. Tested by these rules the allowances to the wife and children are even less than reasonable; therefore, appellant has no just ground of complaint. This is also true as to the attorney's fee of $200.00 allowed appellee. There is no error in the judgment making absolute the rule awarded against appellant for the payment of the *pendente lite* allowance. His response presented no sufficient excuse for its non-payment. The court could, therefore, only compel its payment by judgment on the rule as was done.

In our opinion no cause is presented by the record for disturbing either judgment. Therefore, both are affirmed.