### Stephens v. Stephens.

(Decided March 14, 1922.)

#### Appeal from Grant Circuit Court.

1. Divorce—Grounds—Cruelty.—In a wife's action for divorce. evidence considered and held to make out a case of cruelty sufficient to entitle her to a divorce from bed and board.

2. Divorce—Custody of Children.—In case of divorce the custody of children of tender years will be awarded to the mother, if she be a suitable person, subject to the right of the father to visit them at such times and places as the court may fix.

3. Divorce—Alimony—Amount.—On divorce from bed and board, a husband, who has a farm and personal property worth about $10,000.00, will be required to pay the wife $500.00 a year, payable in monthly installments, for the support of herself and two infant children.

B. F. MENEFEE, HARRY C. MENEFEE and J. M. LASSING for appellant.

J. B. O'NEAL for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Annie Stephens brought suit against John R. Stephens for divorce, alimony and the custody of her two children, on the ground of cruel and inhuman treatment. Her husband counterclaimed for a divorce from bed and board, on the ground of abandonment without fault on his part. On final hearing the chancellor rendered judgment dismissing the petition, as well as the answer and counterclaim. Plaintiff appeals.

In the year 1914, plaintiff moved with her father to the town of Crittenden, where defendant was engaged in the business of farming and merchandising. Soon after her arrival, defendant began calling on her, and in a short time they became engaged. Several months later she yielded to his desires and became *enceinte*. On August 27, 1916, they went to Georgetown where they were married. About two weeks later they moved to the home of defendant's father. In the month of November following, their first child was born. Plaintiff continued to make her home with defendant until June 17, 1918, when she left and took up her abode with her father. At that time she was again about to become a mother and the child was born a few months later. According to plaintiff's evidence, defendant gave her medicines in order to bring about a miscarriage before their marriage. After their marriage he complained of the fact that she had not gotten rid of the child, and in a fit of anger threatened to shoot the child. Aside from a few insignificant articles, he never provided her with any clothes or money. He not only neglected and found fault with her, but would frequently curse and abuse her. He not only called her a "lazy old thing," but endeavored to stress the inferiority of her family by calling her a "branch lily." When it became known that she was about to have the second child he asked her why she didn't have the doctor give her something to get rid of it and told her that if she had any more children, she would have to leave. On June 13, 1918, while they were at the table, she had a discussion with defendant's father, when defendant caught hold of her ear or arm and told her to hush. She picked up a stick of stove wood to defend herself with, and told him not to hit her. Defendant then went out but returned to the kitchen, shook his fist under her nose and told her if she didn't stop, she would have to go away from there. Shortly thereafter, she went to her father's.

According to defendant's evidence, he worked on the farm during the day and at the store in the evening. He

told his wife to get such clothes and money as she needed at the store, and went with her whenever she wanted him to go. He always treated her kindly and their troubles were due to the fact that his wife had an ungovernable temper. He never laid his hands on his wife at the table, but merely asked her to quiet down and not give way to her temper. He admitted that he took no steps to have his wife return, and that when she came after her things, he told her she could get just what she brought there. It is also shown that, immediately on his wife's departure, he advertised in the Cincinnati Times Star and in the local paper that he would not be responsible for any debts contracted by her. His testimony was corroborated in certain respects by his father, who, upon being asked whether defendant talked kindly or unkindly to plaintiff, said, ''Well, he talked to her in his natural voice. He has not got as pleasant sounding voice as some people has got. He talked to her as kindly as he could while they were in my presence; I don't know what they did outside.''

It is apparent from the record, considered as a whole, that defendant's love for his wife had waned before their marriage, and that the marriage itself was a matter of mere form. It is equally apparent that after their marriage he never provided his wife with clothing suitable to her station in life, spent but little time, if any, in her company, and never treated her as a wife and companion. On the contrary, it is clear that he neglected her, found fault with her on numerous occasions and not only made her feel that the children she was about to bear were not welcome, but insisted that she take steps to get rid of them. But it is said that defendant was an energetic man and spent his days in hard work on the farm and his evenings at the store which he conducted. There is no reason why a man cannot be industrious and at the same time considerate of his wife. If he was too busy to spend any time in her company at home, he might have asked her occasionally to accompany him out on the farm, or to go with him to the store in the evening and take a seat on a soap box, if necessary, while he attended to his duties there. It is also said that plaintiff has a high temper and was inclined to quarrel with defendant. This may be true, but where a husband's conduct is such as is shown by this record, he must not expect a perfect disposition or an unruffled temper on the part of his wife. While the evidence may not authorize an absolute divorce,

it shows such cruelty on the part of defendant as will authorize a divorce from bed and board. Irwin v. Irwin, 96 Ky. 318, 28 S. W. 664, 30 S. W. 417; Ramsey v. Ramsey, 162 Ky. 741, 172 S. W. 1082.

As the children are of tender years and it does not appear that their mother is an unsuitable person, she will be awarded their custody, subject to the right of their father to see them at such reasonable times and places as the court may fix. Caudill v. Caudill, 172 Ky. 460, 189 S. W. 431.

Defendant has a farm of eighty acres worth about $7,500.00 or $8,000.00, and a storehouse and other property worth about $2,500.00, and at present he should be required to pay plaintiff $500.00 a year, payable in monthly installments, for the support of herself and the two infant children. Of course, the court may change this allowance should the circumstances of the parties require it.

Judgment reversed and cause remanded for proceedings consistent with this opinion.