## Smith v. Smith.

(Decided April 27, 1923.)

### Appeal from Pike Circuit Court.

1.  Divorce—Charges of Immoral Conduct by Husband Against Wife are not "Cruelty" Unless False.—Accusations by a husband that his wife had been guilty of loose conduct with other men were not "cruel and inhuman treatment" entitling the wife to a divorce unless the charges were false.

2.  Divorce—Evidence Held to Show Lewd and Lascivious Conduct by Wife Entitling Husband to Divorce.—In an action by a wife for divorce on the ground of cruelty, evidence on behalf of the husband held sufficient to show that the wife had been guilty of lewd and lascivious conduct which defeated her right to divorce, notwithstanding her husband's charges against her in letters written to her, which were couched in vulgar and coarse language, and to sustain a decree granting the divorce to the husband.

3.  Divorce—Evidence Held Not to Show Misconduct by Husband.—Evidence in an action for divorce held not to show that the husband had been guilty of lewd conduct which would defeat his right to divorce for such conduct on the part of his wife.

4.  Divorce—Condonation Does not Prevent Divorce for Subsequent Similar Acts.—Condonation by a husband of lewd and lascivious conduct on the part of his wife by remarrying her after a former divorce does not defeat his right to a second divorce for similar conduct repeated by her after the remarriage.

5.  Divorce—Amount of Husband's Estate May be Considered in Fixing Attorney's Fee.—Though the amount of attorney's fee to be allowed to the wife in an action for divorce is primarily governed by the amount of work performed, the size of the husband's estate is a fact which may also be considerd.

6.  Divorce—Attorney's Fee of $300.00 Held not Too Small.—In an action by a wife for divorce, in which it appeared the husband's estate was worth at least $100,000.00, but the pleadings were short, and there were only three sittings for the taking of depositions,

and there were no complicated law questions involved, an allowance to plaintiff of $300.00 as attorney's fee in granting a divorce to defendant was not too small.

PICKLESIMER & STEELE for appellant.

JOHN D. CARROLL and WILLIS STATON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Through this equity action, brought in the Pike circuit court by appellant and plaintiff below, Pearl G. Smith, against her husband, the appellee and defendant below, Will M. Smith, the plaintiff sought a judgment of divorce and for alimony upon the ground of cruel and inhuman treatment as contemplated and set forth in the statute. The answer denied the grounds averred and affirmatively pleaded the defendant's devotion to plaintiff and his willingness and readiness to live with and provide for her, but that she declined to permit him to do so and of her own wrong insisted on living separate and apart from him. Facts were also affirmatively pleaded in a second paragraph showing that plaintiff was guilty of lewd and lascivious conduct, but those precise expressions or words were not incorporated in the pleading. It is stated in brief of counsel for defendant that an amended answer was filed in which that ground was expressly stated and relied on, but that for some cause that pleading was not copied or made a part of the record. That statement in the brief is not denied by any counter one made in brief of counsel for plaintiff; on the contrary, the latter brief silently concedes that defendant sought a divorce from plaintiff in his counterclaim on that ground. The record is quite voluminous and much of the testimony is the baldest kind of hearsay, while an equal amount of it is directed to wholly irrelevant and immaterial issues, by reason of all of which the labors of this court were largely increased, and its ability to dispose of an already delayed and congested docket greatly retarded.

Upon final submission the court dismissed plaintiff's petition and refused her either a divorce or alimony, but allowed her an attorney's fee of three hundred dollars, to be taxed as cost and paid by defendant, and sustained the latter's counterclaim and granted to him an absolute divorce, to reverse which plaintiff has appealed. The question presented is largely, if not entirely, one of fact,

although some legal questions pertaining to practice relating to questions of pleading are discussed in briefs, but none of them are really involved, nor is their determination essential to the disposition of the appeal, and they will be referred to only in so far as it may be deemed necessary to illustrate the views herein expressed.

In some respects the case is somewhat remarkable and apart from the usual and ordinary. The parties were first married in 1910, when plaintiff was 21 years of age, a widow and divorced from her first husband by whom she had one son, who was quite small and lived with her at the time of that marriage. At that time defendant was 44 years of age and was likewise divorced from his first wife by whom he had three living children. Before that marriage defendant assumed the financial burden of supporting and caring for plaintiff's son by her first husband and also sent her to several schools, one in Ohio, another in Kentucky and another in Texas, in which she prosecuted her studies for about two and one-half years before that marriage. She became fairly well educated and was taught and learned stenography and typewriting. The first wedding occurred in Texas and the couple did considerable traveling, with their legal residence in Pike county, but they temporarily resided for a while in Arizona, and so far as this record shows they lived for a while at least in peace and happiness. On May 1, 1917, defendant filed his petition in the Pike circuit court against plaintiff, seeking a divorce from her on the ground of lewd and lascivious conduct, and it does not appear that defendant therein and plaintiff here made any defense thereto; but whether so or not, the court on March 9, 1918, sustained the allegations of that petition and entered a decree dissolving the bonds of matrimony and expressly recited in the judgment that the property rights of the parties had been settled between them by mutual agreement. A part of the property obtained by plaintiff in that settlement was a house and lot where she made her home and wherein her parents lived with her, there being no children born as a result of the marriage.

On December 4, 1918, the parties were married the second time and went immediately to plaintiff's house that she obtained in the settlement of the property rights growing out of the first divorce proceeding and stayed there for a while when they went to defendant's residence, but she left it shortly thereafter and returned to her own dwelling. She testified that defendant some

time after the second marriage struck and beat her, but which he denied and said that she left because he was upbraiding her on account of her associations with lewd women and because of her loose conduct with men. She furthermore claims that defendant was guilty of cruel and inhuman treatment by accusing her of the conduct with which he charged her, but she does not allege in her pleading that such accusations were *false*, which is essential under the decisions of this court classifying them as cruel and inhuman treatment in order to make them competent evidence thereof; but in her testimony she does deny that she was guilty of any such conduct. It must be admitted that some of the letters written by defendant to plaintiff while they were separated the last time contained language most shockingly vulgar and which causes wonder and amazement that a person of his proven standing in the community would be guilty of it. His explanation, which is by no means an excuse, was that he was goaded to do so because of the great affection he entertained for plaintiff and her manifest indifference therto, coupled with her declining to live with him as his wife and that her daily associations with lewd and lascivious characters so preyed on his mind that in moments of wrath, engendered by despair and indignation, he was driven to do so. While that explanation is wholly insufficient, it does possess some extenuating qualities, and it conclusively appears that defendant in his letters implored plaintiff's return to him, and offered to and did furnish, not only to her and her father and mother means of support, but he paid her obligations, which she had incurred and for which she had executed notes, to the amount of forty-four hundred dollars, and likewise paid a bill of three or four hundred dollars for her son due to surgeons and hospitals in the treatment of some malady with which he was afflicted.

Instead, however, of plaintiff accepting the importunities of defendant, the proof unmistakably and without contradiction shows that her chief, if not only, associates were notorious lewd characters, and she, both in the day time and night time, was both flippant and free in her conversations with other men to such an extent as to excite the suspicions as well as to arouse the comment of her neighbors and acquaintances, all of which defendant knew and which he was pleading with her to quit, but without avail. We will not recite all of the proven occasions showing plaintiff's associations and conduct, but one of them was that she accepted from one of the

men with whom she had been familiarly associating a free pass to Roanoke, Virginia, and according to her own testimony she made the trip and stopped at the same hotel whereat was the man who furnished her the pass.

Further recitation of the evidence or its substance is unnecessary. Upon the whole it is undoubtedly sufficient to prove the ground upon which defendant relied in his answer and especially was it sufficient to sustain the finding of that fact by the chancellor. If, therefore, defendant on some occasions when he was no doubt to some extent beside himself, was unpardonably guilty of using extreme, vulgar and coarse language, it did not lessen plaintiff's guilt, nor did it furnish an excuse for her conduct prior thereto, nor did it constitute a defense for her refusing to perform her part in establishing and maintaining a happy, decent and morally clean family home. She was selected by defendant for that purpose and both human and divine law appointed her to that station, and both enjoined upon her, not only for the benefit of society at large, but for the preservation of the home that she should not destroy either or both by such prostituting actions and conduct as the record proves against her. Howsoever much the court, presided over by human beings, may pity or sympathize with her, yet a woman, the same as a man, has the opportunity to pursue the upright and proper course or to depart therefrom, and when she is guilty of the latter equity says to her, "Your hands are unclean and while so you shall not have relief."

But, it is insisted at this point that the proof shows defendant guilty of similar conduct and that the doctrine in divorce proceedings known as "Recrimination" should be applied as was done in the case of Smith v. Smith, 181 Ky. 55. The trouble with that contention is that no reliance was had in any pleading upon any such doctrine, but if there had been there is no competent proof in this case that defendant was guilty of any such conduct. It is true that by some incompetent hearsay testimony it was attempted to be shown that he had been guilty with a Miss Reynolds, but that intimation was not only disproven by him, but also by a number of other witnesses, and we are not prepared to say that the record shows any such guilt on his part, although as a matter of fact it may have been true.

It is furthermore insisted that defendant condoned the lewd and lascivious conduct of plaintiff by marrying her the second time, which no doubt is true as to all such con-

duct of which he had knowledge prior to that time, but no text book nor any case is cited holding that subsequent similar conduct occurring after the condoning act can not be relied upon on the ground that it was condoned. Root v. Root, 23 L. R. A. (N. S.) 240; 9 R. C. L., pages 380 and 384; 19 C. J. 88, and Anderson v. Anderson, 89 Neb. 570, Ann. Cas. 1912C 1, and annotated note to that case.

Some criticism is made as to the amount of the attorney's fee allowed the plaintiff, it being insisted that it should be much larger. Such matters are primarily governed by the amount of work performed, but the size of defendant's estate is a fact which may also be taken into consideration. He is proven in this case to be worth at least one hundred thousand dollars, but the pleadings were short and there were only three sittings for the taking of depositions, which at the outside could not possibly have occupied in their taking more than about four days. There were no complicated law questions involved and under all the facts and circumstances we are not disposed to disturb the allowance made by the court.

Wherefore, the judgment is affirmed.