## Bone v. Bone.

(Decided November 2, 1923.)

Appeal from Caldwell Circuit Court.

1. Divorce—Marital Relation Not Dissolved, Unless Grounds Clearly Established.—The marital relation is a sacred one, and should not be dissolved, unless the grounds authorizing it are clearly established.

2. Divorce—Husband and Wife—Husband Not Authorized to Inflict Corporal Punishment Upon Wife—Harsh Treatment May Constitute "Cruelty," Without Physical Violence.---However provoking the conduct of a wife may be, a husband is not authorized to inflict on her corporal punishment, nor to adopt a systematic course of ill treatment towards her, consisting of continual scolding, and fault finding, and using unkind language toward her, and exhibiting a studied contempt for her, since such a course may manifest "cruelty" within the contemplation of the statute as effectually as corporal punishment.

3. Divorce—Condonation Takes Away Right of Divorce, Unless Promise to Reform is Broken.—Under Ky. Stats., section 2120, cohabitation of man and wife after knowledge of adultery or lewdness complained of takes away the right of divorce therefor, unless the continued cohabitation was under a promise from the guilty spouse to repent and refrain thereafter from such conduct, and that promise is broken, in which case the original ground is revived.

4. Divorce—Evidence Held to Show Husband Condoned Conduct of Wife.—In an action wherein husband sought a divorce for adultery and lewdness, evidence held to show that the husband condoned the conduct of his wife.

5. Divorce—Evidence Held to Show Cruel Treatment of Wife.—In an action for divorce, evidence held to show cruelty of the husband toward the wife.

6. Divorce—Award of $200.00 and Attorney's Fees Held Proper.—On divorce granted wife from husband worth $700.00, there being no children, an allowance of $200.00 was made as alimony, in addition to an attorney's fee of $100.00.

J. ELLIOTT BAKER for appellant.

R. W. & ALVIN LISANBY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on original appeal and affirming on cross appeal.

The parties, appellant and plaintiff below, and appellee and defendant below, are colored people and are husband and wife. They were married in 1904 and lived and cohabited together till February 11, 1921, when the wife left her husband and afterwards filed this equity action against him to obtain a divorce from the bonds of matrimony upon the grounds (a), of cruel and inhuman behavior towards her for not less than six months so as to indicate a settled aversion to her and to destroy permanently her peace and happiness, and (b), cruel beating and injury by the husband to her so as to endanger her life or bodily injury from remaining with him.

Defendant answered and denied the grounds relied on in the petition and in a second paragraph charged his wife with adultery and such lewd and lascivious behavior on her part as proved her to be unchaste. That paragraph of the answer was denied and, after proof taken and submission of the case, the court dismissed both the petition and cross petition, from which judgment the wife prosecutes this appeal and the husband has prayed and obtained in this court a cross appeal. There are no disputed questions of law involved, and the disposition of the case turns on the facts as disclosed by the testimony, and in giving our version of them we will not undertake a detailed statement of the testimony but refer to it only in a general way, since to do otherwise would be of no service to the parties or the profession.

At the beginning it may be stated that defendant is shown to be a man of considerable temper and possesses an unfortunate jealous disposition. For a number of years the parties seemed to have gotten along reasonably harmoniously and they each worked together and per-

formed their respective parts in providing for the household and making a living. However, plaintiff testified that within a year or so after the marriage defendant began to display his temper and on one occasion he struck her, but that passed by and no serious difficulty apepars to have occured till about the year 1916. At that time one John Bird, a neighbor and friend of the couple, began visiting their house, and we think the proof shows quite conclusively that a suspicious intimacy grew up between him and plaintiff. There is no direct testimony that they were guilty of any immoral act, but they were seen together at times and places when, to say the least of it, such conduct was very unbecoming on the part of the wife. Defendant learned of those acts and he very naturally objected and upbraided her about them, resulting in most instances in heated quarrels and sometimes personal difficulties, on two of which, according to the proof, defendant struck plaintiff. Later on he found a couple of letters written to plaintiff by a colored man by the name of Green, whom plaintiff had met while on a visit some time prior thereto, and those letters, according to the testimony of defendant (they being lost or destroyed), were couched in very endearing terms and clearly indicated an unwarranted familiarity between the writer and plaintiff, but there was nothing in their proven contents expressly showing prior adulterous acts between the two. The finding of those letters resulted in additional embroilments between the two, but the storms passed away and the matrimonial bark had a lease of peaceful sailing until defendant found another letter from another colored man by the name of Mitchell written to his wife from Paducah, Ky., at which place she had visited a short while before. That letter (which plaintiff denied receiving) was somewhat of the same tenor as the Green letters, and its discovery produced a similar matrimonial disturbance to the prior ones, but the proof fails to show any actual fighting between the two on account thereof. Some time in 1916 plaintiff left her husband because of, as she claims, his cruel conduct towards her, but that was followed by a reconciliation wherein mutual promises were made and mutual forgiveness extended. After the finding of the Mitchell letter and after its followed disturbance there was another mutual forgiveness and renewed promises made by both to observe the correct course toward each other in the

future, and the parties continued to cohabit, but according to the plaintiff the defendant was cold and surly in his disposition toward her.

She visited her mother in Princeton, Ky., near Christmas, 1920, and during the visit her husband went there and inquired of his mother-in-law the whereabouts of his wife. He was informed that she was over at the house of a neighbor, and he went there but did not find her. He returned to his mother-in-law's and said that he heard her voice and that of a man in a room in the house, but his wife about that time came out and he demanded the privilege of entering the room, to which his wife objected and shut the door and prevented him from doing so. She returned home and the two lived together until the day of separation. It is shown by the wife and her mother that no man was in the room with plaintiff on that occasion, and it is likewise testified to by the wife that at no time did she have intercourse with John Bird or other person. It is also testified to by plaintiff that defendant seriously objected to her joining some church society, and also objected to the extent of her participation in church affairs, and that he became very angry with her because of those matters. He admitted in his testimony his high temper and admitted other conduct on his part towards his wife that was by no means justified by any of the proven facts.

The marital relation is a sacred one and it should not be dissolved unless the grounds authorizing it are clearly established. From the testimony in this case we are not prepared to say that the statutory ground relied on by the husband in his cross petition has been proven; but while that is true, the record discloses a course of conduct on the part of plaintiff which no court could approve and which was wholly unbecoming a true and affectionate wife and, to say the least of it, furnished grounds for strong objections, as well as legitimate reprimands, by the defendant. But, however provoking the conduct of a wife might be, a husband is not authorized to inflict upon her corporal punishment, nor to adopt a systematic course of ill-treatment toward her, consisting of continual scolding and fault-finding and using unkind language toward her, and exhibiting a studied contempt for her, since such a course may manifest cruelty within the contemplation of the statute as effectually as corporal punishment, all of which is clearly pointed out in the case of McClin-

tock v. McClintock, 147 Ky. 409. Other cases from this court to the same effect could be cited. If the evidence was sufficient to clearly establish the statutory ground relied on by defendant, there would then be two courses open to him, viz., to separate from her, or to condone the offense, but her guilt would not justify him in inflicting corporal punishment on her or to condone the offense and thereafter, while living with her, pursue the cold, systematic, cruel conduct toward her above referred to. If he chose, as he did, to condone her prior conduct in that respect it became his duty to accept the situation and deport himself toward her as a true husband and with conjugal kindness. If he acted on her repentance, he should treat it as genuine and put aside his former grievances and correct his former attitude towards her which her condoned misconduct engendered.

After the taking of the proof an amended reply was filed pleading condonation of the wife's alleged lewd and lascivious conduct. Not only at common law but under the provisions of section 2120 of the statutes, ''Cohabitation of man and wife after knowledge of adultery or lewdness complained of, shall take away the right of divorce therefor,'' unless the continued cohabitation was under a promise from the guilty spouse to repent and refrain thereafter from such conduct *and* that promise is broken, in which case the original ground is revived. 19 Corpus Juris, page 83, paragraph 192, and page 98, paragraphs 203 and 204; and Muir v. Muir, 133 Ky. 125, 28 Ky. L. R. 1355, 4 L. R. A. (N. S.) 909. Where the condoned act is repeated, it negatives the idea of repentance upon which the condonation was agreed to as was held in the numerous cases cited in note 97, page 88 in the reference to Corpus Juris.

That the defendant in this case condoned the conduct of his wife, relied on in his cross petition, is clearly established by the evidence. The condoning occurred after each successive act of misconduct by the wife, including the last one, which occurred immediately preceding Christmas in 1920, and there is nothing to show a repetition of that conduct after that time. On the other hand, the proof of defendant's conduct towards her as measured by the correct course hereinbefore recited, was wholly unjustifiable and, according to the McClintock case, *supra,* and others which might be cited, authorized the granting of a divorce to the wife upon the grounds relied on in the petition.

The proof shows the husband to be worth in personal and real estate something in the neighborhood of $1,000.00, and that it was largely accumulated by the joint efforts and labor of both himself and wife. He may owe some debts but not more than enough to reduce his total holdings to $700.00. They have no children and we think the equities of the case justify a total allowance to the wife of $200.00 as alimony. An attorney's fee of $100.00 was allowed to plaintiff and of which no complaint is made, as we understand counsel, but, if otherwise, we find nothing in the record which would justify our disturbing that part of the judgment.

Wherefore the judgment on the original appeal is reversed with directions to grant plaintiff the divorce prayed for in her petition; to adjudge her $200.00 alimony, and for proceedings consistent with this opinion, but on the cross appeal the judgment is affirmed.