### Grove v. Grove.

(Decided March 24, 1931.)

34

KENDRICK R. LEWIS and RICHARD B. CRAWFORD for appellant.

WALTER S. LAPP for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing on appeal and affirming on cross-appeal.

This record contains the unhappy history of a misadventure in matrimony. The parties were married in New York about twenty years ago and immediately thereafter located in Louisville where they have since lived. They have a son about nineteen years old, named for his father. Mr. Grove engaged in the moving picture business and has been successful. In 1927, serious trouble began to brew between him and his wife which culminated in a final separation. Several temporary separations had preceded the final one. In August, 1928, Mrs. Grove instituted an action for alimony and divorce upon the grounds of cruel and inhuman treatment, and such cruel beating and injury, or attempt at injury, as indicated an outrageous temper in the husband and probable danger to the wife from remaining with him. The husband filed a counterclaim for divorce upon the ground that the wife had been guilty of such lewd and lascivious conduct with a man named Norman Hall as proved her to be unchaste. Later the counterclaim was amplified by amendment so as to charge the wife with improper conduct with an unknown man. In an affidavit filed the husband made an accusation of adultery against his wife.

The testimony took a wide range and many trival circumstances were delineated. Judge Allen, in an opinion prepared with his usual felicity, reviewed the entire record, reaching the conclusion that neither party was entitled to relief. Although admitting that the husband had been guilty of striking and abusing his wife, doubt was expressed whether the misconduct had continued for a sufficient period, or was carried to such an extent, as to indicate a settled aversion to his wife. But he based his refusal of relief to the wife upon a finding that she was at fault because of her indiscretions, and because of her disobedience of her husband's wishes respecting her association with Norman Hall. Mrs. Grove has prosecuted an appeal and Mr. Grove has taken a cross-appeal.

It would be useless as well as burdensome to cite all the details of this domestic debacle, and we shall state merely the ultimate facts and conclusions.

It was testified by the wife that in the fall of 1927, Mr. Grove began serious mistreatment, such as strikng and sometimes injuring her, pulling her hair, falsely accusing her, severely scolding her, driving her away, and threatening greater injury. She further complains that the cruel charges made by the defendant in pleading and preparing his defense were groundless and calculated to destroy her good name, and that such charges, made without evidence, were bolstered up with the perjured testimony of criminals and friends of criminals. Standing alone these facts plainly constituted such cruelty as entitled the plaintiff to a divorce and alimony. Riley v. Riley, 233 Ky. 134, 25 S. W. (2d) 59, 61; Kahr v. Kahr, 199 Ky. 434, 251 S. W. 199; Ramey v. Ramey, 224 Ky. 398, 6 S. W. (2d) 470; McGaughey v. McGaughey, 231 Ky. 209, 21 S. W. (2d) 245; Miller v. Miller, 229 Ky. 436, 17 S. W. (2d) 412; Jones v. Jones, 205 Ky. 538, 266 S. W. 48.

The chancellor refused relief to plaintiff, however, because she was not without fault, since she had given Mr. Grove such provocation as mitigated, if it did not excuse, his violence. The conclusion that Mrs. Grove had contributed to the collapse of the marital relationship was deemed adequate to preclude her from obtaining a divorce or alimony. The correctness of that conclusion involves a consideration of the conduct of Mrs. Grove. It consists of several episodes, and is interlaced with the conduct of her husband.

Three or four years prior to the separation a youth named Norman Hall became acquainted with the Grove family and during that period of time had been an intimate associate of Mr. and Mrs. Grove, and of their son. The whole testimony, except in two particulars, relates to the association of Mrs. Grove with this youth. She danced with him at the Inn Logola. A witness testified that there was something suggestive about the manner of dancing. Aside from the vague and unsatisfactory nature of the testimony of that particular witness, it was clearly proven that Mrs. Grove, in the presence of friends, and some members of her family, merely danced in a decent and respectable style with the young man. Mr. Grove became very bitter toward the young man, and described him as a ''soda water sheik.'' Judge Allen observed that the record exhibited Hall as an idler, probably as a parasite, but he did not find from the evidence that there was any conduct on the part of Mrs. Grove that could be called lewd or lascivious, and certainly nothing that proved her to be unchaste. If Hall merely performed the function of a ''gigolo'' for Mrs. Grove at the dances, no reflection is to be cast upon the character of a woman who utilizes such services, however much it may impugn her taste, or whatever may be thought of a man who engages in such occupation.

On one ocasion, Mr. Grove came to his apartment at the hotel and the room door was locked. It was opened upon his request, and Mrs. Grove and Hall were found in the room. Mr. Grove now urges that importance should be ascribed to the circumstance, but when the facts are stated it amounts to nothing. Hall and another young man named Young were at the apartment with Mrs. Grove when a certain musical instrument was desired. Young went to get it, and during the brief absence, Mr. Grove appeared upon the scene. Young soon returned with the musical instrument, and Mr. Grove thought nothing of the matter, leaving the young men there with his wife. After the action was filed Grove testified about the incident and referred to the fact that his confidence in his wife was unshaken. Indeed, he did not seek to attribute sinister meaning to the incidents now elaborated until he was unable to negotiate a settlement of the case. During the taking of his testimony, he said that he had told Mrs. Grove's attorney that he believed his wife was a pure woman; ''that she had never done any-

thing wrong;'' that he wanted to make some sort of settlement, and disagreement on that is what started this fight. A short time after the room episode, Mr. Grove came to the hotel at night and found Mrs. Grove and the young man sitting on the mezzanine floor of the hotel. He struck Mrs. Grove violently, but did nothing to the boy, except to threaten him. He went to his room and remained there, but permitted Mrs. Grove to sit up all night in the lobby of the hotel. She then left him and went with her son to the home of a half-sister of Mr. Grove, where she remained about a week. While she was there Hall called upon two occasions. The evidence discloses nothing except the inference that might arise from the fact of the calls. A remark overheard by the half-sister indicates that Mrs. Grove contemplated a suit for divorce, and the matter of evidence available to her was under discussion. But the Groves soon became reconciled, and continued to live at the hotel. About a month later Mrs. Grove drove to West Baden with a young lady and Hall. There was nothing wrong in connection with the episode, except that Mrs. Grove was with Hall and failed to disclose to Mr. Grove that Hall had been on the trip. But in view of the critical attitude and violent outbursts of temper of Mr. Grove, it is not difficult to understand why Mrs. Grove was not as candid with him as she should have been. During an absence of Mr. Grove, Mrs. Grove had a small party at their cottage in the country, which was attended by Hall. There was music and dancing, and the party ended at a proper hour. A witness testified that Mrs. Grove told her not to mention the party to Mr. Grove. Mrs. Grove denied making the request, but assuming that she did, it may be reconciled with perfect propriety on the part of Mrs. Grove. Mr. Grove had then become estranged from Hall and had punished Mrs. Grove on at least two occasions. Hall was not invited there by Mrs. Grove, but by one of the young lady guests at the party, and Mrs. Grove might have thought it better to conceal the facts than to explain them to Mr. Grove, who did not hesitate to question her veracity. On one occasion Hall called Grove's neighbor at 3 a. m. asking her to call Mrs. Grove to the telephone. Mrs. Grove went to the telephone, but did nothing for Hall. She said Hall had been involved in some accident and was at the City Hospital. Hall said he telephoned for Mr. Grove to come but the neighbor said he asked for Mrs.

Grove. Mr. Grove says his wife lied to him about it, but she says she reported the facts. Finally, one afternoon while Hall was sitting on the porch of the Grove cottage drinking a beverage and reading a newspaper, Grove came home unexpectedly and Hall hid under a bed. He says he got scared and lost his head. Grove says he looked under every bed but that of his son, which happened to be the one where Hall was hiding. Grove says he had told Hall he would break his neck if he caught him with his wife again, and Hall said Grove slammed a door like he was angry. Mrs. Grove was with her son at the time, swimming in the river, while numerous neighbors were watching them. One other incident should be noted. Mrs. Grove went with a young lady to Cincinnati, where she and her companion were entertained by a young man named Reedy, who had made his home with the Groves when he was about 15 years old, and in whom Mrs. Grove felt an abiding and natural interest. But Mr. Grove punished Mrs. Grove claiming that she had deceived him. Reedy wrote to Mrs. Grove on one or more occasions addressing her in her maiden name. Mrs. Grove did not answer the letters. The reason for the use of the maiden name was that Mr. Grove had become estranged from Reedy and he did not want him to get the letter. It is not claimed that the letter itself was improper, but that the concealment was a species of disloyalty. It must be and is freely admitted that Mrs. Grove showed bad judgment in continuing associations to which her husband objected. But it must be remembered that she had been grossly mistreated by her husband, naturally felt resentful about it, and especially so because of his suspicions of her character which she knew to be baseless. Under such conditions the wisest course is not always pursued. Stephens v. Stephens, 194 Ky. 180, 238 S. W. 380. Yet indiscretions of such character do not constitute lewd and lascivious conduct or provocation justifying violence. There is not a scintilla of evidence, except the testimony of Donham, which the chancellor refused to consider, and to which reference will be made later, that in any way tends to sustain the charges of lewd and lascivious conduct leveled against Mrs. Grove.

In Anderson v. Anderson, 152 Ky. 773, 154 S. W. 1, attention was called to the fact that not one single act of a lewd or lascivious nature had been proven, and that mere indiscretion, or disregard of convention, did not

constitute such conduct as proves a woman to be unchaste. Miller v. Miller, 229 Ky. 436, 17 S. W. (2d) 412.

During the preparation of the case, Mr. Grove introduced a witness named Donham, who testified to an incriminating, but most incredible, story. He was proven to be of a criminal character, utterly lost to all sense of honor and unworthy of belief as a witness. The chancellor dismissed his deposition from consideration, and we are satisfied he ruled rightly in that respect. Appellant's attorneys severely condemn Mr. Grove for introducing Donham as a witness without making investigation as to his character. Donham had been convicted of criminal offenses in several states and the slightest investigation would have disclosed his disreputable character. Mr. Grove permitted himself to be imposed upon and his negligence indicates a disregard of consequences to his wife; but we are not prepared to say that the incident alone constituted such cruelty as to justify a judgment of divorce. Two witnesses testified to the credibility of Donham, and it is urged that such witnesses are themselves unworthy of belief and that their depositons should be disregarded. But credulity and credibility are distinct things. Many credulous persons may be entirely truthful witnesses. The witnesses did not display much acquaintance with Donham, and their testimony is not of great importance. Moreover, we are aware of no rule of evidence that would justify the suppression of the deposition of a witness because he had mistakenly testified respecting the credibility of another witness. At most, the circumstance is addressed to the weight of the evidence, and does not affect its admissibility or the competency of the witness. Many minor incidents are invoked to convict Mrs. Grove of misconduct. It tends to prove nothing more than indiscretions on her part, and the facts must be considered in the light of all circumstances appearing. Mrs. Grove produced many witnesses to prove her good demeanor upon all occasions, and the rule is that a wife will not be condemned if her acts may be reasonably reconciled with the presumption of innocence.

Mrs. Grove had a son almost as old as the boys with whom she associated so much, and the fact that she found interest in such society is not altogether inexplicable. The incident detailed by the hotel detective was denied by

Mrs. Grove and Norman Hall, and the detective himself forgot to mention it when he first testified. After Mr. Grove became involved in serious straits to produce some evidence of good faith in making the charges he did against his wife, the detective came forward with his story. Under the circumstances, little credence can be placed in such testimony.

It must be remembered that the unfounded charge of lewd and lascivious conduct against an innocent wife is itself evidence of cruel and inhuman treatment, except when made in good faith, and upon reasonable grounds for believing it. Rogers v. Rogers, 17 S. W. 573, 13 Ky. Law Rep. 526; Hooe v. Hooe, 122 Ky. 590, 92 S. W. 317, 29 Ky. Law Rep. 113, 5 L. R. A. (N. S.) 729, 13 Ann. Cas. 214; Jones v. Jones, 205 Ky. 538, 266 S. W. 48; Howard v. Howard, 222 Ky. 203, 300 S. W. 598; Miller v. Miller, 223 Ky. 537, 4 S. W. (2d) 363; Wesley v. Wesley, 181 Ky. 135, 204 S. W. 165; Johnson v. Johnson, 183 Ky. 421, 209 S. W. 385; Nichols v. Nichols, 189 Ky. 500, 225 S. W. 147; Smith v. Smith, 198 Ky. 765, 250 S. W. 128; Williams v. Williams, 199 Ky. 259, 250 S. W. 982; Sallee v. Sallee, 213 Ky. 125, 280 S. W. 932; Morgan v. Morgan, 231 Ky. 420, 21 S. W. (2d) 653.

The chancellor was unwilling upon the record expressly to condemn Mrs. Grove, and yet by his judgment denying her any relief, he did impliedly put the burden of the blame upon her. Her conduct, whether regarded as disobedience or indiscretion, was insufficient to justify her husband in striking, threatening, or injuring her. No such provocation as excused the husband's conduct was shown. The record tends to show that Mr. Grove was of a tyrannous temperament. When the depositions were being taken, it was necessary to have an officer present to preserve decorum. Upon one occasion he left the room, which he explained was necessary to keep from striking a witness. There is much in the evidence to indicate that he is a dominant and domineering man, impatient of all opposition.

The proof tends to show that he provided well for his family, but was not very attentive to his wife, or much given to spending time in her company. It may be said that he was absorbed in his business cares and that the nature of his calling kept him out late at night. But even so, he was not justified in neglecting or otherwise mistreating his wife. Boreing v. Boreing, 114 Ky. 522,

71 S. W. 431, 24 Ky. Law Rep. 1288; Stephens v. Stephens, 194 Ky. 180, 238 S. W. 380.

Mere provocation or disobedience does not authorize a husband to inflict corporal punishment upon his wife. Bone v. Bone, 200 Ky. 736, 255 S. W. 530; McKee v. McKee, 191 Ky. 669, 231 S. W. 213.

Many acts of cruelty are testified to by Mrs. Grove alone, most of which are denied by Mr. Grove; but there is sufficient corroboration found in the admissions of Mr. Grove, and the disposition manifested by him, to help out the testimony of the wife. It is not only physical violence, but other acts, such as criticism, coldness, neglect, contempt, and disrespect, that may constitute a case of continuous cruelty sufficient to sustain the charge of cruel and inhuman treatment for not less than six months, indicating a settled aversion to the wife, and calculated to destroy permanently her peace and happiness. Boreing v. Boreing supra; Bone v. Bone 200 Ky. 739, 255 S. W. 530; McClintock v. McClintock, 147 Ky. 409, 144 S. W. 68, 39 L. R. A. (N. S.) 1127.

It will be observed that the statute giving grounds for divorce to both parties makes no mention of fault. But certain other grounds confine the right to a divorce therefor to the party not in fault, whilst a wife is entitled to a divorce upon the grounds asserted in this case when not in like fault. If a husband habitually behaves towards a wife for not less than six months in such cruel and inhuman manner as to indicate a settled aversion to her, or to destroy permanently her peace and happiness, the wife may have a divorce. Further, if the husband is guilty of such cruel beating or injury, or attempt at injury, of the wife, as indicates an outrageous temper in him or probable danger to her life, or great bodily injury from her remaining with him, she is entitled to relief. Kentucky Statutes, sec. 2117. If the first provision was confined to physical violence, there would seem to be no reason for the second ground of relief. But it was recognized that cruelty might assume many forms, and the language was made sweeping enough to embrace them all. The indiscretions and disobedience attributed to Mrs. Grove, in any event, did not constitute like fault with the acts of violence and cruelty charged against her husband. Stiles v. Stiles, 224 Ky. 526, 6 S. W. (2d) 679; Green v. Green, 152 Ky. 489, 153 S. W. 775.

From a careful consideration of this record, we are constrained to the conclusion that proper consideration

for his wife would have saved Mr. Grove from all ground of complaint, and that the derelictions on the part of Mrs. Grove would not have occurred but for the attitude and conduct of her husband. In any event, her indiscretions and bad judgment did not deprive her of all remedy for the wrongs done her, or place her beyond the pale of protection by the law. Schnuck v. Schnuck, 163 Ky. 135, 173 S. W. 347; Ramsey v. Ramsey, 162 Ky. 741, 172 S. W. 1082; Stephens v. Stephens, 194 Ky. 180, 238 S. W. 380.

It is apparent that Mr. Grove did not really believe that his wife was radically disloyal to him. The result of their differences is most unfortunate, as they had spent happily many years of married life, and each manifested great consideration for the feelings and welfare of the son. The trouble may be attributed more to hot temper and lack of tact than to any real or substantial basis for such consequences as have followed. Tabers v. Tabers, 195 Ky. 596, 242 S. W. 584. But in view of the conduct of Mr. Grove, his wife was justified in obeying his directions to leave his roof tree, and under the circumstances, her conduct, blamable though it may have been, was not such as to destroy her rights under the law. The bitterness engendered by the litigation renders it unlikely that a divorce from bed and board would be adequate, and might merely aggravate the situation. Cf. Irwin v. Irwin, 96 Ky. 318, 28 S. W. 664, 30 S. W. 417, 16 Ky. Law Rep. 657.

We conclude, therefore, that Mrs. Grove should be granted an absolute divorce and a reasonable allowance as alimony.

It is said in the brief that Mr. Grove's estate has been greatly impaired since the stipulation respecting his resources was filed. It is apparent, however, that he has a substantial income, and should be required to pay Mrs. Grove $100 a month until further orders of the court. The chancellor should retain control of the case, so that the amount may be augmented or abated as changes in the circumstances of the parties may render reasonable some alteration of the arrangement.

The judgment is reversed on the appeal, with direction to enter a judgment in accordance with this opinion. Upon the cross-appeal of the appellee, the judgment is affirmed.