## Hehr v. Hehr.

### (Decided June 13, 1924.)

### Appeal from Harrison Circuit Court.

1.  Divorce—Divorce Cannot be Disturbed on Appeal.—Court of Appeals is without authority to disturb a judgment granting a divorce.
2.  Divorce—Finding of no Cruelty Sustained.—Finding of chancellor that defendant was not guilty of cruelty held sustained by evidence.
3.  Divorce—Finding of no Settled Aversion to Plaintiff Sustained by Evidence.—Finding of chancellor that defendant's conduct did not indicate a settled aversion to plaintiff held sustained by evidence.
4.  Divorce—Evidence Held to Show Plaintiff's Adultery Warranting Divorce for Defendant.—Evidence held to show adultery by plaintiff warranting granting of divorce to defendant.
5.  Divorce—Wife Guilty of Adultery Not Entitled to Alimony on Divorce.—Wife divorced for adultery is not entitled to alimony.

C. M. JEWETT and DANIEL DURBIN for appellant.

M. C. SWINFORD and WADE H. LAIL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and plaintiff below, Mary Hehr, and appellee and defendant below, Chris. Hehr, were married

in Harrison county, Kentucky, in the early part of the year 1902. The defendant was a widower with three male children, the youngest of whom was something like four years old and the oldest one, whose name was and is Garnett Hehr, was between ten and eleven years of age. For a short while after the marriage the parties lived at Broadville, a country village in Harrison county, and then moved to a farm which defendant had acquired some short distance from that place and containing about 223 acres upon which they resided and lived together as husband and wife until December 15, 1920, on which day defendant notified plaintiff to leave, which she did and went to the home of a relative in the county, carrying with her some household and kitchen furniture which she claimed was her individual property.

On February 15, 1921, she filed this equity action in the Harrison circuit court against defendant, in which she sought a divorce from him upon the statutory grounds of cruel and inhuman habitual behavior towards her by defendant for not less than six months before the filing of the action, and in such a cruel and inhuman manner as to indicate a settled aversion to her, and to destroy permanently her peace and happiness; and cruel beating or injury of her by the defendant to such an extent as to indicate an outrageous temper in him or probable danger to her life or great bodily injury to her from her continuing to remain with him. The answer denied the grounds of divorce stated in the petition and by counterclaim sought a divorce from plaintiff upon the ground that she was guilty of such lewd and lascivious conduct as proved her to be unchaste. The reply denied the grounds set up in the counterclaim, and after extensive proof taken, the court, upon submission, dismissed plaintiff's petition, but sustained the counterclaim and rendered judgment sustaining defendant's prayer in his answer for an absolute divorce, and dismissed plaintiff's claim for alimony for which she also sought judgment in her petition. From that judgment plaintiff prosecutes this appeal, and the only questions discussed in brief are ones of fact.

The testimony presents a case both sad and pathetic, and one easily calculated to excite the human sympathies of the court on behalf of the unfortunate plaintiff, and which, if we were to alone consult, we would gladly modify the judgment so as to recognize her claim for alimony which is the only relief, under any view of the testi-

mony, we would grant her, since under numerous opinions of this court our authority to disturb the judgment giving defendant a divorce is entirely wanting. The evidence shows that plaintiff, during her married life with defendant, performed well the domestic duties usually incumbent upon a housewife not surrounded by affluence. She discharged the ordinary household duties willingly and industriously, included in which were, sometimes cooking for the family, sometimes washing and ironing, etc., but she was frequently furnished help and assistance, and it does not appear that she was unduly burdened in the performance of those duties or that they, upon the whole, exceeded the average amount falling to the lot of a rural housekeeper; except, perhaps, upon isolated occasions when the pressing necessities for farm labor would temporarily increase the labors of cooking, but most generally on such occasions, as well as sometimes in ordinary ones, there was assisting help provided by defendant, and upon the whole we can not say that he was neglectful in failing to relieve plaintiff and furnish her help when the circumstances demanded it. Defendant was somewhat uncouth and possessed a taciturn disposition and was undemonstrative in his affections. His education was limited and perhaps he was never taught nor did he practice the finer qualities in human nature that would draw people to him. Yet, he is shown to be a man of undisputed honesty and integrity and not without a just sense of his duties to the members of his family as well as the duties of others to him. His deportment, therefore, as the head of the family, was somewhat fashioned after that of a business manager of a commercial enterprise rather than after the more approved course of a demonstratively affectionate husband and father. We do not find, however, anything in the record pertaining to his conduct towards plaintiff that we could properly characterize as cruel and inhuman. At most we could only say that he was unfortunate in not knowing how or possessing the willingness to show and exhibit more of the finer considerations of thoughtfulness and affection, so necessary to produce joy and happiness in the home. But, his deficiencies in those regards do not appear to be anything more than temperamental and as such may be classified as unfortunate rather than as purposeful and deliberate. On the other hand, his conceptions as to his duties as a provider for the members of

his household seem to have measured up to those usually possessed by others occupying a similar position, and we can find nothing in the matters so far discussed to sustain the plaintiff's charges.

But it is urged that he directed coarse and profane language towards plaintiff on a number of occasions throughout their married life, which it is insisted was of such a nature as to indicate a settled aversion to her and sufficient to destroy permanently her peace and happiness; and that although he never struck her, that on occasions, as testified to by her, he attempted to do so and that such attempts indicated an outrageous temper in him, so as to create danger to plaintiff from her continuing to remain with him. Were we to look alone to the testimony of plaintiff, there might be grounds for seriously considering the argument, but she is scarcely supported by any other witness who testified in the case, and she is contradicted by defendant and a score of other witnesses who gave their depositions, not excluding plaintiff's own son, Frazier Hehr, who was about eighteen years of age when he testified. It is true he sustained plaintiff in some minor particulars on a few of the occasions she testified to, but in the main his testimony failed to corroborate that of his mother. Furthermore, even on the occasions when some of the witnesses testified that defendant would lose his temper and indulge in more or less intemperate language, he was provoked to do so by vilification and abuse of him by plaintiff or of some one or more of his three children by his former marriage. Unfortunately for plaintiff, the testimony indisputably shows that she possesses a very uncontrollable temper, and we will not occupy space in this opinion by inserting the epithets which the testimony proves she frequently applied to both defendant and to his first set of children. It must be admitted, however, that at the beginning when they were quite small, plaintiff seems to have realized her obligations as a stepmother and in the main discharged her duties as such, although it is also proven that on occasion she would cruelly mistreat them and to such an extent that, as they grew older, they also grew colder towards her and finally ceased speaking to her. If, therefore, defendant occasionally, in defending himself or his children, did go beyond the bounds of strict propriety in his expressions of protest, we feel that, in view of the frailties of humanity, the cir-

cumstances under which it was done might properly be urged in mitigation. Upon the entire proof in the case we discover no reason to disturb the finding of the chancellor that the grounds relied on in plaintiff's petition were unproven.

Taking up now the grounds relied on by defendant in his counterclaim, a most unusual condition is proven without contradiction. For about twelve years before the entry of the United States into the World War, Garnett Hehr, plaintiff's oldest stepson, had not spoken to her although living all the while in the same household. He enlisted as a soldier in the United States Army, after which plaintiff seems to have suddenly formed a great affection for him. There was introduced in the record five letters which she wrote him at different times from November, 1918, to within a short time before the separation, and it would be a useless consumption of time and space to insert any of them or even excerpts from them in this opinion. Parts of their contents are expressive of plaintiff's great lonesomeness, as well as dissatisfaction with her surroundings, especially after Garnett left the home and enlisted in the army, and because of that fact she expressed in those letters most burning love and affection for Garnett, who was about ten years her junior, and stated to him that she would never be happy until they were married and suggested that they run away and live together as husband and wife. She also recalled therein, and directed his attention to, prior occasions of conduct between the two which was evidently criminal in its nature and she implored him to return to her that those occasions might be repeated. In short, the letters abound in endearing language, which a most passionate and hot-blooded youth, though an expert, could not improve upon; and they leave no doubt in the mind that a criminal intimacy existed between plaintiff and her stepson. Suspicioning such intimacy, Garnett's next oldest brother, Owen Hehr, began to watch them after the former was discharged from the army and had returned home. He testified that he caught them in the criminal act one night about eleven o'clock in the kitchen when Garnett had returned from some place in the neighborhood. A negro boy, about eighteen years of age, and who had been living with the family for a number of years, testified to discovering the same acts of intimacy on another occasion but which occurred in the dining room, instead of the kitchen; and plaintiff told

a neighboring housewife of that discovery as well as her great love and affection for Garnett. She also told another one of her female neighbors practically the same thing and who was introduced as a witness by plaintiff and gave the damaging testimony against her on cross-examination. So that, without elaborating the testimony introduced to sustain the grounds of the counterclaim, we are convinced that they were proven almost to the exclusion of a reasonable doubt. It is true that plaintiff denied any wrongful conduct with Garnett Hehr or any one else, and she attempted to explain the letters by saying that they were written in a motherly spirit and that she intended no more thereby than to express her affections for her stepson as a mother would for her own child. But we can not accept that explanation in view of the suggestions of marriage and other matters contained in them and which would be abhorrent to any genuine and true mother in any civilized society. There is no room, under the facts of this case, for the application of the doctrine of "recrimination" in divorce cases where the facts authorize it, even if such a defense was pleaded and relied on, which was not done, and we have most reluctantly come to the conclusion that there is no escape from approving the judgment appealed from.

Counsel for plaintiff in his brief makes a most commendable appeal for her, which of course is necessarily based upon the contention that the evidence of the guilt of his client is not to be believed, but which we can not accept because of its most convincing effect. We acknowledge that under the principles of justice between man and man, plaintiff would be entitled to share in the property owned by defendant. But, howsoever undisputed might be her right to do so under ordinary circumstances the law says that it, as well as even the higher right to life itself, may be forfeited by the conduct of those entitled thereto; and one of the grounds of forfeiture of the right herein claimed is for the wife to discard the rules of prescribed rectitude, as well as those enjoined by the marriage vow. If, therefore, she despoils the marriage bed by failing to observe those obligations, she must suffer the consequences, since the law in such cases says that the one so sinning must himself pay the penalties, in obedience to the decree that "whatsoever a man soweth, that shall he also reap."

Our sympathies, therefore, for this erring plaintiff, howsoever great they may be, are insufficient to rescue her from her unfortunate dilemma, of which she is the sole author, and for that reason the judgment is affirmed.