# Whaley v. Whaley.

Nov. 8, 1939.

As Modified and Extended Dec. 13, 1939.

John J. Winn for appellant.

W. B. White for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing in part and affirming in part.

W. A. Whaley sued Katherine Whaley for divorce on the ground of cruel treatment, and later by amended petition charged adultery and lewd conduct. He stated there had been born to them three children whose custody he asked. Their ages at the time of the filing of the suit in 1938 were twelve, ten and nine years, respectively. The defendant traversed the allegations as to the grounds for divorce, and stated that four children had been born to the union. The plaintiff had not referred to the youngest child, then about two and one-half years old. The defendant counter-claimed and asked a divorce on the ground of cruel treatment and

for the custody of the children, with alimony and maintenance. She also pleaded condonation. The judgment awarded the divorce to the wife, but granted the father custody of the three older children, with the privilege of the mother to have them visit her one day in each week. The custody of the youngest child was given to the mother. The wife was adjudged $50 a month as alimony and for the maintenance of this child, and was also given the household furnishings, but she was required to move out of the house. On this appeal the plaintiff contends the defendant is not entitled to alimony because of her guilt and his innocence of wrongdoing. The defendant, by cross-appeal, contends for the custody of all the children and an increased allowance.

First, we should say that the suspicion and accusation by Whaley in respect to the paternity of the youngest child is baseless and cruel. There is not a line of evidence tending in any way to sustain the charge and the plaintiff's own testimony affirmatively establishes his paternity. The judgment so declared. It was probably this false accusation which induced the circuit court to grant the divorce to the wife.

There is no specific or direct evidence supporting the charge of adultery. As to the wife's lascivious conduct, the evidence is of certain detached circumstances which in themselves are of no significance either because perfectly consistent with innocence or of a satisfactory explanation. But in the light of the disclosure of some love letters, these circumstances become of probative value.

In 1936, appellant found under an old clock two love letters written on the back of some blank checks. This caused a separation of the parties for three or four weeks. The plaintiff introduced the following typewritten statement:

"Dear Arnold: I have not lived as I should. If you will take up with me our married life again, I promise you that my life will be all right. This 28th day of April, 1936.

"Katherine Whaley."

This document formed the basis of the plea of condonation. The rule in respect to condonation, both at common law and by Section 2120, Kentucky Statutes, is that "cohabitation as man and wife, after a knowledge

of adultery or lewdness complained of, shall take away the right of divorce therefor," unless the continued cohabitation was because of repentance and under a promise of the guilty spouse to refrain thereafter from such conduct and that promise is broken. When it is broken, the original ground is revived, for the basis of or consideration for the condonation has been destroyed. Bone v. Bone, 200 Ky. 736, 255 S. W. 530.

The accusation of improper conduct of the wife is confined to her relations with John R. Crockett, a well-to-do neighboring farmer, a married man, sixty-one years old. He had been a life-long friend and near neighbor of young Whaley. After his father's death, and he had assumed the responsibility of managing the farm which belonged to his mother and himself, upon his request Mr. Crockett undertook to help him. The house in which Whaley was living was only a few yards from their division line. His mother lived nearby on the other side. It appears the frequent visits and presence of Crockett in and about the home excited the young man's suspicion. Crockett testified to his reasons for being there from time to time, all of which were legitimate. Mrs. Whaley testified that before the first separation her husband had never said anything about Crockett's attentions; he had depended on Crockett for advice and help and his visits were strictly on business or merely neighborly calls. Whaley testified that his wife first claimed that his mother (between whom there was apparently little affection) put the letters under the clock, but later after the reconciliation, as we gather it, they had discussed the letters and she admitted they had been received from Crockett. She had explained a reference contained in one of them. However, she never confessed any impropriety, her admission being confined to the mere receipt of the letters. She told him that she and Crockett would "lie out of it." But Whaley's evidence on this point is not very persuasive. Notwithstanding Mrs. Whaley's declarations of complete ignorance of these letters, and Crockett's specific denial that he wrote them, from the evidence of comparative handwriting given by numerous qualified witnesses, including an outstanding expert, together with our own comparison with duplicates written on dictation by Crockett while giving his deposition in the case, and the other circumstances of influence, we are satisfied that Crockett wrote them.

The plaintiff's evidence is in substance and effect that these letters were in the mind of the parties when Mrs. Whaley signed the foregoing acknowledgment and promise of future good behavior. As stated, she denied knowing anything about such document and contended it was a forgery, but we are convinced she did sign it. There had been presented to her and she had refused to sign a paper agreeing to give up custody of two of her children at the time of the first separation, and she had also refused to sign a deed conveying a part of the farm to her mother-in-law. There was no contradiction of this.

After this reconciliation, according to the husband, for some time there was no cause for suspicion other than that his wife continued to speak to Crockett in a friendly way. Then from time to time several incidents occurred of a suspicious nature and he became watchful. Those incidents which he described were explained and would probably have to be regarded of little significance except for the former experiences and later occurrences. The precipitating cause of the final separation in March, 1938, was the following event:

Whaley testified that as he entered the living room he noticed that his wife had been writing something and her embarrassment and discomfiture attracted his attention. When he pulled out a nursery book which she had had and put away quickly, his wife grabbed it, with the exclamation, "You shan't have it." They had a vigorous tussle over its possession. She tore the book and threw part of it into the stove. He retrieved that part of it and held on to the other. The mutilated book in which it had been placed and the letter were presented in evidence. It is addressed to "My darling," and continues in a like romantic vein, intimating there had been a lovers' quarrel and the writer's forgiveness. Mrs. Whaley contended very emphatically that she was preparing this paper to submit in a contest being conducted as a part of a radio program of a serial love story. A prize had been offered for the best note that could be written by the heroine to the hero "making up" after a quarrel. She did not want her husband to see it until it had been finished, and so told him. Though vigorous, the tussle was friendly and good humored. As to the radio contest and her purpose to submit such a letter, Mrs. Whaley is supported in a measure by the testimony of her thirteen year old daughter, though the

child knew nothing about the particular letter involved. The defendant testified that the program was sponsored by a certain soap company, though it may have been some other, for her memory was not clear. The plaintiff proved that the named company had not sponsored such a program. The defendant's outright denial of signing the reconciliation agreement weakens the weak defense. In the light of the other circumstances, we are constrained to believe this interrupted letter was intended for Crockett and that there had been a renewal of the relations disclosed by the letters she had received from him two years before. The basis for the reconciliation was, therefore, destroyed, and condonation wiped out, and the former misconduct becomes a part of the grounds for the divorce sought by the husband.

The letters from Crockett speak of mutual love, of the handicaps and of a justification for whatever sacrifice might be involved. They contain some cryptic statements, though it must be said there appears no reference to sexual relations, and there is no oral testimony of such or even of opportunities therefor. As a practical, common-sense view of the situation, there is no escape from the conclusion that the defendant was guilty of such conduct as forfeited her right to continue as the plaintiff's wife and to his support as such. The decree should have been awarded to the husband although it may not now be disturbed. Hehr v. Hehr, 203 Ky. 727, 263 S. W. 33; Vallandingham v. Vallandingham, 232 Ky. 123, 22 S. W. (2d) 424; Horton v. Horton, 276 Ky. 104, 122 S. W. (2d) 793.

This conclusion requires the reversal of that part of the judgment which awarded the wife alimony. The child, whose complete custody was awarded to the mother without objection, is entitled to the same advantages as the other three children, who, it appears, are being well cared for. The mother is without estate and, so far as the record discloses, is not prepared for employment in any substantial gainful occupation. To enable her to care for this child like the other children would seem to require at least $50 a month during her tender years. To the extent that the judgment awards that sum to the mother for the maintenance of the child it is affirmed. The judgment, both in respect to the custody of the children and their maintenance, does not conclude its revision upon establishing a substantial change in the conditions.

On the original appeal the judgment is reversed with directions to enter another in accordance with this opinion. On the cross-appeal the judgment is affirmed.