### Tabers v. Tabers.

(Decided June 23, 1922.)

### Appeal from Calloway Circuit Court.

Divorce—Evidence—In divorce cases it is the duty of the court to scrutinize the testimony closely and to dismiss the pleading seeking it, unless the testimony is sufficient to thoroughly convince the court that the grounds relied on are established. Under this rule general statements by the wife without giving specific acts, and petty quarrels by a youthful couple amounting to scarcely more than childishness, will not be sufficient to authorize the granting of a divorce upon the statutory ground of habitual cruel and inhuman behavior, etc.

A. D. THOMPSON for appellant.

HESTER & HESTER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and plaintiff below, Moyl Tabers, filed this equity action in the Calloway circuit court against appellee and defendant below, Harper Tabers, seeking an absolute divorce from him upon the statutory ground of such habitual cruel and inhuman behavior towards her for more than six months as to indicate a settled aversion and to destroy permanently her peace and happiness. She also sought alimony and obtained an attachment which was levied on a small amount of personal property, one item of which was a mule claimed to be owned by defendant. The answer denied the grounds of divorce and defendant's father filed an intervening petition claiming the mule which had been attached and his brother filed a similar petition claiming some of the other attached property. Appropriate pleadings made the issues and upon final submission the court dismissed the petition, and complaining of that judgment plaintiff appeals.

The only witness introduced to support the alleged grounds for the divorce was plaintiff herself and she testified that she and defendant were married in August, 1919, and the separation occurred on May 26, 1920, at which time plaintiff left the home of herself and husband and went to her parents, who lived a short distance from them. She makes a general statement that defendant was brutal and cruel towards her and that on the occasion when she left they had a quarrel and he ordered her away from home, and she testified that she thereupon went out of the house and lingered but a short while in the yard when the defendant, whom she said locked the door, unlocked it and she returned and remained there until the next morning when her husband left for his work on the farm. Shortly after his departure she went to her mother's and remained there till late in the afternoon and when her husband returned from his work she had wrapped up in some manner her clothing preparatory to and with the intention of permanently leaving him and taking up her abode with her father and mother. He importuned her not to do so but finally agreed that if she was determined he would go along with her, and he did. When they arrived there they called for her parents to come to the gate, which they did, and defendant spoke to his mother-in-law saying, ''Moyl has left and I want to see if you can speak to her any way to get her to go back,'' and after some talk and some general accusations by plaintiff, but without particularizing as appears from the record, defendant stated, ''It's done now but it can't be helped.'' But plaintiff refused to return and stated that defendant was cruel, and that she could not live with him. When plaintiff's parents asked her in what way he was cruel she declined to say further than he was brutish and quarrelsome. Not a word supporting the charge of being quarrelsome is testified to by plaintiff and it is attempted to be supported only by her general statement. The only fact to which she or any one else testified, even remotely substantiating general statements of brutality, was her answer to the question as to what occurred the day before she left when she claimed that defendant locked the door, which answer was: ''Well, he called on me at noon, I refused, he locked me out of doors and told me to go home,'' but she immediately went back into the house and left next day as stated. She furthermore testified that defendant would not take her to the different places where he would

go, but she points out no particular place where she requested him to take her and he refused. On the contrary, it does appear that he and she visited at least to some extent the neighbors, and they frequently went to the homes of their respective parents, and sometimes went to church together in the neighboring village. And, although plaintiff testified that defendant did not sufficiently clothe her, yet the evidence to our minds shows that he did so to the extent of his ability. The parties were poor and had comparatively no property when they were married and for the first three months lived with the parents of defendant, where, according to all the proof, they were happy and contented. After that they moved to a small house on the farm of his father, and at the time of the separation he was preparing to grow a crop on land rented from his father, and everybody says that he was a reasonably industrious man. Defendant denies the acts of cruelty of which his wife accuses him by her general statements, and though a number of witnesses testified who were frequently around and about them and in their presence, no one supports her. On the contrary, they say that he provided for and clothed her to the full extent of his ability, and that they observed no unkind conduct by him towards her, nor did they hear from him any unkind words.

It is easy to discern from the above inserted answer of plaintiff what she had in mind and the particular conduct of defendant which she characterized as brutal, but her charge is in such general and indefinite language as not to afford a basis for the determination by the court as to whether it constituted cruelty within the meaning of the divorce statute. Enough appears in the record to show that, perhaps, defendant may not have possessed the highest degree of refinement, or proper conception of becoming modesty and most likely, neither of them possessed the requisite equanimity of temper or mutual respect and forbearance essential for the sailing of the matrimonial bark on smooth waters. These facts alone, however, will not authorize a court to destroy the bark, but it *does* call for earnest efforts of the parties to smooth the waters, which we are convinced from the testimony could have been done in this case by even a moderate exercise of patience and consideration on the part of both. Human nature is not perfect. The best of us have our faults. All do not view life and its incidents alike, nor

is there unified agreement about many things. Temper, in a greater or less degree, is a common heritage. Wants, wishes, and hopes are divergent. Each party to the marriage relation should recognize these indisputable facts and shape their conduct and guard their speech with the view of harmony rather than discord. Happiness and the full divine purpose in establishing the institution of marriage can be accomplished in no other way, and it is essential that it be done in order that each party to the relation duly regard their vows and thereby perpetuate the sanctity of the home without which civilization will be destroyed. The truth of the matter is, that the facility with which divorces may be obtained throughout the country and the readiness with which, at least, some of the courts seem to act in granting them, has long since reached the alarming stage, and to the point where it should be firmly curbed and corrected. To hold that petty and many times childish disputes, which more often than otherwise result from the failure to recognize the above facts and duties, are sufficient to establish the statutory ground for divorce would make for the home a foundation of sand instead of one of rock as was intended in order to preserve it, the purity of society, and to secure the highest type of civilization. People situated, as were the parties to this suit, are not prepared to gratify the wants and wishes of each other as are those more blessed with this world's goods, but more frequently than otherwise if they would realize that fact and be content with their lot and portion in life, and perform their duties accordingly, there would be far less divorce suits and society would rest upon a firmer foundation. Before a court should exercise the delicate power vested in it to sever the bonds of matrimony, it ought to be thoroughly convinced from the evidence that the grounds upon which it may do so are shown to exist and the one relied on here can not be adjudged to exist from such temporary and trifling disagreements supported only by such non-convincing evidence as is found in this record.

We conclude, therefore, that the court properly dismissed the petition, and the judgment is affirmed.