# Denehie v. Denehie.

March 5, 1948.

Dissenting opinion March 9, 1948.

J. B. Johnson, Judge.

B. B. Snyder for appellant.

Glenn Stephens for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is a divorce action filed by appellant against appellee in the Whitley circuit court on March 31, 1947. The ground alleged for the relief sought is the statutory period of abandonment for one year. No actual service was had upon the defendant, nor was any summons issued on the petition for his personal service. Attempted grounds for the procurement of a warning order was made in the petition, saying: "That he (appellee) has no fixed place of abode, but the name of the place where he usually gets his mail is 1442 Fairmount

Street, Washington, D. C. where a postoffice is kept nearest to the place where the defendant resides.'' (Our parenthesis.)

Glenn Stephens, of the Williamsburg Bar, was appointed nonresident attorney, but before he filed his report the defendant on April 9, 1947, which was the tenth day after the petition was filed, entered his appearance by filing his answer and which, omitting his signature, says:

''Comes the defendant and enters his appearance to this action, and says that the property rights between he and the plaintiff have been settled; he says he agrees to the taking of depositions at any time without notice and the case may be submitted for judgment whenever it may stand for trial.''

Three depositions were read at the trial and they were taken on interrogatories filed by plaintiff, but none were filed by the defendant, nor did the Clerk of the court propound any as prescribed by subsection (2) of section 575 of our Civil Code of Practice. The three witnesses were plaintiff, her father, S. P. Petrey, and Ray Smith, an attorney, who proved the law relating to abandonment as a ground for divorce as existing in Washington, D. C. where all of the depositions were taken and where the alleged abandonment occurred.

Plaintiff in her depositions gave the date of her marriage to defendant (August 3, 1942) and the date of the alleged separation (September, 1942) and that she was a professional dancer exhibiting her art in various states and on various occasions throughout the United States. In attempting to prove the ground relied on by her for the relief sought she was asked and answered:

''Q. If he left and abandoned you, please state where and for what cause? A. He did leave and abandon me. He abandoned me in Washington, D. C. He enlisted in the U. S. Army.

''Q. Have you and the defendant lived or cohabited since the date of your separation? A. No.

''Q. Whose fault was it that you and he separated? A. It was his fault that we separated.''

She then stated that they had no property and no

children and that she claimed Whitley County, in which she was born, as her residence, though she had never registered or voted in the precinct where her parents resided and where she was born.

Her father, who left his farm in Whitley County and moved to Washington, D. C., several years ago, where he gave his depositions was asked and answered:

"Q. Are they (the parties) separated? If so, when did they separate and whose fault was it? A. Yes, they are separated. They separated in September, 1942. It was her husband's fault." (Our parenthesis.)

Such testimony as so given by plaintiff and her father constitutes the entire proof heard in support of the only ground alleged in the petition for the divorce sought.

The court upon submission dismissed plaintiff's petition delivering a written opinion in which he expressed doubt as to the proper venue of the action, but which was possibly waived by defendant failing to object to it. The court then held that (1) the evidence in support of the only ground relied on was wholly insufficient to establish it, and (2) that it was clearly apparent that the action was the result of collusion between husband and wife and he dismissed the petition accordingly. From that judgment plaintiff prosecutes this appeal.

In disposing of the case we shall neither discuss nor determine the question of venue since possibly the court concluded that the question was waived by defendant when he filed his answer thereby entering his appearance without objecting to it; but the two reasons for dismissing the petition were and are sound and supported by permanently settled rules in the granting of divorces as shown by text writers and opinions of courts of last resort in all of the states of the union. Substantiating that statement is the text in 17 A. J. 155, section 13, saying:

"The default of the defendant or the taking of a bill pro confesso amounts to very little as regards the plaintiff's recovery of a judgment or decree for divorce. The interest of the public in divorce cases is such that the courts proceed with practically the same formality as though the action were being contested by the defend-

ant, and do not grant a divorce unless the plaintiff's proof shows that he or she is entitled thereto. In other words, a divorce will not be granted on a judgment by default or on a decree pro confesso without proof of the cause for divorce. The object of this rule is to prevent the obtaining of divorce by collusion between the parties when no legal ground for divorce exists."

To the same effect is the text in 27 C. J. S., Divorce, 135, wherein it is said:

"In order to authorize a decree of divorce there must be clear proof of the cause of action even where defendant fails to offer evidence or where the case is submitted on ex parte depositions, and the grounds for divorce must be established by a clear preponderance of evidence. Accordingly, the jurisdictional facts must be established by satisfactory evidence and corroboration, and it must be shown by a clear preponderance of the evidence that plaintiff is the innocent and injured party; * * *."

In support of that text nearly two pages of cited opinions from nearly all of the courts of the Union are attached, including some Kentucky cases of this court, which are: Quinn v. Quinn, 279 Ky. 286, 130 S. W. 2d 834; Phelps v. Phelps, 232 Ky. 683, 24 S. W. 2d 584; Honaker v. Honaker, 218 Ky. 212, 291 S. W. 42; Coker v. Coker, 216 Ky. 669, 288 S. W. 291; Bone v. Bone, 200 Ky. 736, 255 S. W. 530.

In the Honaker case, in approving the two reasons for dismissing the petition, we said (218 Ky. 212, 291 S. W. 43):

"The evidence heard in the divorce proceedings is before us, being copied in this record, and, apart from any additional evidence heard at the trial of this case, we unhesitatingly conclude that it did not sustain the grounds of the divorce. It involved only conclusions of the witnesses who testified as to the abandonment relied on, and they were given in response to leading questions framed so as to require only that character of answer. Defendant was not represented at the time the depositions were taken, and there was no cross-examination of the witnesses.

"We have frequently, and without exception, de-

clared that the marital relation on account of its sacred-ness and for the protection of society should not be annulled, except upon positive and competent evidence to establish the legal ground, and that mere conclusions of witnesses, unsupported by facts fortifying them, would be insufficient to dissolve the bonds. See Witt v. Witt, 188 Ky. 45, 220 S. W. 1065, and Sanders v. Sanders, 184 Ky. 119, 211 S. W. 425. The court therefore was not deprived of authority to grant alimony herein, if plaintiff had not lost her right to apply therefor.''

That case was followed by the case of Phelps v. Phelps, supra (232 Ky. 683, 24 S. W. 2d 585), a divorce action based upon the same ground of abandonment. The trial court dismissed the petition on the ground of insufficient evidence followed by the wife's appeal. We affirmed the judgment, and in doing so, we said:

"It is, therefore, essentially proper that courts should look with scrutinizing care into such proceedings, so as to guard against collusion and other questionable methods seeking a destruction of such relationship.

"Such scrutiny not only requires that the pleadings should be so framed as to entitle the pleader to the remedy he seeks, but also that his evidence should be clear and explicit. In support thereof are the cases of Sanders v. Sanders, 184 Ky. 119, 211 S. W. 425, Witt v. Witt, 168 Ky. 45, 220 S. W. 1065, Tabers v. Tabers, 195 Ky. 596, 242 S. W. 584, 585, and Honaker v. Honaker, 218 Ky. 212, 291 S. W. 42. In line with what we have just said we take this excerpt from the Tabers opinion: 'The truth of the matter is that the facility with which divorces may be obtained throughout the country, and the readiness with which at least some of the courts seem to act in granting them, has long since reached the alarming stage, and to the point where it should be firmly curbed and corrected.' ''

To the same effect is the case of Quinn v. Quinn, supra, which is cited in the above excerpt from the text in 27 C. J. S. We could lengthen this opinion by listing many other texts and many more opinions coinciding with the excerpt from the cited domestic ones supra,

but since there are none to the contrary we will refrain from doing so.

Our practice requires that before a divorce may be obtained on the ground of abandonment the plaintiff must allege that he or she is without like faults and that the testimony must be sufficient to establish that ground by proving an intentional and wrongful abandonment by the defendant and that the plaintiff is without fault. No such effort was made by either of the witnesses testifying in this case for plaintiff. Each of them gave only a conclusion answer, and which we have seen is insufficient to establish the relied on ground.

It is also true and known to all members of the profession that the allegations in a petition seeking a divorce is always controverted by the law and that even an express admission of defendant of the existence of such grounds does not dispense with clear and conclusive proof of the existence of the grounds relied on by added proof clearly establishing it. The court was therefore correct in holding that the proof adduced herein was insufficient to grant the divorce sought by plaintiff.

We also conclude with the court that the record clearly reveals collusion by the parties. Each of them according to the record had headquarters in Washington, D. C., and were at least temporarily located there. The depositions were taken by interrogatories although defendant was not before the court on constructive service but by actual appearance. His answer discloses an undoubted willingness for the divorce to be granted which was tantamount to a pro confesso. In it he agreed for the evidence to be taken without notice to him. He filed no cross interrogatories nor was there any notice given to him that any such interrogatories were filed by his wife. He entered his appearance ten days after his wife's petition was filed, and, in effect, admitted the charge of abandonment leveled against him by her. A more graphic picture of collusion could scarcely be made even by express admission.

The plaintiff did not seek a divorce upon the ground of five years' separation without cohabitation, since that period had not expired at the time she filed her petition, even if the time that defendant was enlisted in the army

could be considered in maturing that ground, a question that we do not decide.

Wherefore, for the reasons stated, the judgment is affirmed.

Chief Justice Sims dissenting.

The majority opinion is so different from what I conceive the law to be and works such an unnecessary hardship upon the parties that I feel constrained to give my reasons for dissenting.

I fail to see any collusion on the part of the husband in entering his appearance and agreeing that the proof might be taken and the cause submitted without notice to him. Our statute (KRS 403.030) traverses the averments of a petition for divorce and makes proof necessary. The same character of answer (there called a stipulation) was filed by the defendant wife in the recent case of Dyer v. Dyer, 300 Ky. 559, 189 S. W. 2d 842, and we did not hold that she was guilty of collusion. It is difficult for me to understand why the answer in the instant case was condemned in such scathing words, "A more graphic picture of collusion could scarcely be made even by express admission," when we accepted practically the same answer in the Dyer opinion as being a proper pleading.

May I ask how the profession is to be guided by our opinions if in one case we approve a pleading as proper, and, without overruling the first opinion, approximately two years later condemn in most vigorous terms practically the same pleading?

The chancellor and the majority of the court held that the proof did not show an abandonment by the defendant of his wife. Appellant testified in simple but plain and unambiguous words that they were married on Aug. 3, 1942, and separated September 3rd of that year, when he abandoned her. She further testified, "It was his fault we separated." She then stated they had not lived together since his abandonment of her and they had neither property nor children.

The appellant's father testified: "Yes, they separated. They separated in September, 1942. It was her husband's fault. When he returned from the army, he

ignored her and did not make any effort to support her.'' In my judgment, this is abandonment, and the record shows it continued from 1942 until this suit was filed March 31, 1947.

The proof was taken by interrogatories. Why, I do not know—perhaps, to save expense. It is commonly known among lawyers that the less expensive manner of taking proof is upon interrogatories. But it is the most unsatisfactory because it has not the ring and does not carry the convincing force of depositions.

The chancellor in his opinion complains that the questions were leading and this court complains that the proof was not clear and convincing. It is difficult to take proof upon interrogatories without the questions being somewhat leading, and practically impossible to obtain clear and convincing proof by this method. But nobody objected to the leading questions. Indeed, there was no one to object, and it is a well-known procedure that unless an objection is made and preserved, it is waived. So why be so technical about this non-contested divorce case? I think the cases cited in the majority opinion can be distinguished from the instant one, but will not take the time and space necessary for that.

The majority opinion says much about the sacredness of the marital relation and implies that the sanctity of the home is at stake in this relatively unimportant case. Without meaning any disrespect to this couple, I doubt if there was any vast amount of sacredness involved when this sixteen year old girl married and lived with defendant a month. And I doubt if they even had a home. Be that as it may, it is better for them and better for society generally to grant them a divorce than to refuse it and turn them out in the world without status or standing in our social system. They are neither married nor are they divorced, consequently, they are shunned by all.

There is no good reason to make this young couple go into all the disagreeable details of their separation and turn their lives wrong-side-out and make a public record which may embarrass them and their friends as long as they live. Human nature is usually shown at its worst in the divorce courts, where often small dif-

ferences are magnified into great offenses. The stature of very few couples would be heightened by exposing to the public gaze their domestic difficulties in detail. It seems that the appellant has attempted to state only so much of her difficulty with her husband as is necessary to obtain a divorce. But the chancellor and this court have said in effect, "No, that is but a conclusion and the sacredness of the marital relation requires this sixteen year old bride to give in full the details of her marital troubles during the month she and her husband lived together," albeit they may be most disgusting, revolting and nauseating.

It is a debatable question whether it is better to grant a divorce on reasonable grounds or to make the grounds so strict that it is most difficult to obtain a divorce. The writer subscribes to that school of thought that the public welfare, the sacredness of marriage and the sanctity of the home are better protected by granting a divorce to people with irreconcilable differences and clashing personalities than to chain them together with what amounts to unholy bonds of matrimony.

The line of demarcation between stating a fact and a conclusion is at times so small as to be infinitesimal. When one says a man is drunk, is sane, is insane, is happy, is angry, is swearing, is praying, is talking loudly, is smart or is dull, it is difficult to say whether or not a fact or a conclusion is stated. Likewise, when appellant testified that her husband had abandoned her and that the separation was his fault, her testimony is as susceptible of being construed as a statement of fact as it is of being a conclusion. And when the father testified that the husband ignored and made no effort to support his wife when he returned from the army, he stated a fact constituting an abandonment.

I cannot see the advantage of the chancellor or of this court construing the testimony of this girl and her father as being a conclusion rather than a statement of fact. Especially in the circumstances of this case, where the parties had been living separate and apart for four years and ten months when the judgment was entered, and in view of the fact that KRS 403.020 states living apart without any cohabitation for five consecutive years before suit is filed is a ground for divorce. I

fear the chancellor and this court were crusading for the sacredness of marriage and the sanctity of the home, and, like so many crusaders, they lost sight of the real issue and, as did Cervantes' hero, Don Quixote, drew their lance, spurred their steed and attacked a windmill.

For the reasons given, I most respectfully dissent.